No. 90,454

STATE OF KANSAS, *Appellee*, v. DALE M.L. DENNEY, *Appellant*.

(101 P.3d 1257)

Opinion filed December 17, 2004.

*Carl F.A. Maughan*, of Law Offices of Carl Fredrick Alexander Maughan, L.L.C., of Wichita, argued the cause and was on the briefs for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Phill Kline*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

NUSS, J.: Dale Denney appeals the denial of his motions for correction of an illegal sentence and for DNA testing. Our jurisdiction is under K.S.A. 22-3601(b)(1), maximum sentence of life imprisonment imposed.

We hold that the trial court did not err in denying Denney's motion to correct an illegal sentence but that it did err in denying his motion for DNA testing. Therefore, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS

*Criminal acts and convictions*

Case No. 87 CR 944

In 1987, Denney was convicted of rape and aggravated burglary. His sentences were of indeterminate length, and his sentence be-

gin date was January 7, 1988. He was paroled on July 20, 1992, and was on parole at the times of the offenses described below.

## Case No. 93 CR 1343

Among other things, Denney held a steak knife against the throat of his sister-in-law, P.D., and penetrated her anus with his penis. Because these offenses occurred in October 1992, the new Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.*, did not yet apply. See K.S.A. 21-4723. Accordingly, Denney was charged with, and eventually convicted of a Class B felony, aggravated criminal sodomy; a Class D felony, aggravated sexual battery; and a Class E felony, aggravated weapons violation. The sentences for aggravated sexual battery (6-20 years) and aggravated weapons violation (2-10 years) were to run concurrent with each other but consecutive to the aggravated criminal sodomy sentence of 30 years to life.

## Case No. 93 CR 1268

After beating and choking his former girlfriend, A.L., and placing a belt around her throat, Denney penetrated her anus with his penis. Because these offenses occurred on July 16, 1993, the KSGA did apply. See K.S.A. 21-4723. These charges were consolidated for trial with the charges in 93 CR 1343. Denney was convicted in 93 CR 1268 of aggravated criminal sodomy (severity level 2 person felony), aggravated battery (severity level 4 person felony), aggravated sexual battery (severity level 5 person felony), and aggravated weapons violation (severity level 9 nonperson felony). The accompanying sentences were to run consecutively, for a total of 228 months. They were also to run consecutive to the sentences in 93 CR 1343.

This court upheld the convictions from both 1993 cases in *State v. Denney*, 258 Kan. 437, 905 P.2d 657 (1995). Additionally, based upon these additional convictions, Denney's parole in 87 CR 944 was revoked on April 15, 1994.

*Motion to correct illegal sentence*

On February 15, 2001, Denney filed a motion in 87 CR 944 to correct an illegal sentence, *i.e.*, to convert his indeterminate sen-

tence to a determinate one because he had been on parole when he committed the crimes in 93 CR 1268 and 93 CR 1343. On April 1, 2001, the trial court denied this motion on the basis that he was not eligible for conversion because of the severity level of his crimes. Denney appealed, and the Court of Appeals held that K.S.A. 1993 Supp. 22-3717(f) entitled Denney "to have his prior sentences converted." *State v. Denney*, No. 87,755, unpublished opinion filed June 21, 2002, slip op. at 2.

On remand, the trial court reduced the sentences in 87 CR 944 from 5 to 20 years to a sentence of 36 months in accordance with K.S.A. 1993 Supp. 22-3717(f)(2). According to a letter from the Kansas Department of Corrections (DOC) to the trial court, since Denney had already served more than 36 months, it considered his sentence to be satisfied in that case. However, DOC considered that Denney was now serving a 36 years to life sentence in 93 CR 1343 and, once paroled from that sentence, he would begin serving the 228 month sentence in 93 CR 1268 in accordance with K.S.A. 2003 Supp. 22-3717(f). DOC believed that the Court of Appeals opinion did not convert the sentence in 93 CR 1343 because Denney was not on parole in that case when he committed the offense in 93 CR 1268.

On October 3, 2002, Denney filed a motion to correct an illegal sentence with the trial court. He argued that the Court of Appeals' decision had mandated his sentence to be converted not only in 87 CR 944 but also in 93 CR 1343 and that DOC had failed to convert his indeterminate sentence of 36 years to life in the latter case. He also requested credit for time served in excess of the 36 months in 87 CR 344. The trial court did not appoint counsel for Denney and did not hear oral arguments before denying the motion.

*Motion for DNA testing*

On September 12, 2002, Denney filed a pro se motion requesting that DNA testing be performed in 93 CR 1268 and 93 CR 1343 pursuant to K.S.A. 2003 Supp. 21-2512. The trial court denied the motion without appointing counsel and without oral argument, noting that the statute expressly limits testing to those cases in which

an offender has been convicted of rape or murder and that Denney had been convicted of neither.

## ANALYSIS:

Issue 1: *Did the district court err in denying Denney's motion to correct an illegal sentence?*

Denney argues that his sentence in 93 CR 1343—like his sentence in 88 CR 744—should have been converted to a determinate one. Accordingly, he claims it is an illegal sentence. The State responds that such a conversion is not allowed by statute.

The issue of whether a criminal sentence is illegal is a question of law. Our review of questions of law is unlimited. *State v. Harper,* 275 Kan. 888, 889, 69 P.3d. 1105 (2003). As K.S.A. 22-3504(1) states:

"The court may correct an illegal sentence at any time. The defendant shall receive full credit for time spent in custody under the sentence prior to correction. The defendant shall have a right to a hearing, after reasonable notice to be fixed by the court, to be personally present and to have the assistance of counsel in any proceeding for the correction of an illegal sentence."

Criminal statutes and penalties in effect at the time of a criminal offense are controlling. *State v. Mayberry,* 248 Kan. 369, Syl. ¶ 15, 807 P.2d 86 (1991). The statute which governs the issue of sentence conversion in the instant case is K.S.A. 1993 Supp. 22-3717(f). That statute, which was substantially amended in 1994, provided at subsection (f):

"If an inmate is sentenced to prison for a crime committed after July 1, 1993, while on parole or conditional release for a crime committed prior to July 1, 1993, the old sentence shall be converted into a determinate sentence and will run consecutive to the new sentence as follows:

(1) Twelve months for class C, D or E felonies or the conditional release date whichever is shorter;

(2) 36 months for class A or B felonies or the conditional release date whichever is shorter."

Denney was on parole in 87 CR 944 when he committed the crimes in 93 CR 1268 and 93 CR 1343. The statute requires that the old sentence, in 87 CR 944, be converted from an indeterminate sentence to a determinate one. While the crimes charged in

93 CR 1343 were indisputably committed prior to July 1, 1993 (in October 1992), Denney was not on parole or conditional release in that case when he committed the crimes in 93 CR 1268 (July 16, 1993). Therefore, K.S.A. 1993 Supp. 22-3717(f) does not provide for the sentence in 93 CR 1343 to be converted to a determinate one.

Moreover, K.S.A. 22-3504 does not automatically require a full hearing upon the filing of a motion to correct an illegal sentence. As we stated in *State v. Mebane*, 278 Kan. 131, 138, 91 P.3d 1175 (2004).

"Rather, when a defendant files such a motion, the district court has a duty to make a preliminary examination of the motion to determine if substantial issues of law or fact are raised. If there are none, the court may summarily dismiss the motion. Only if the court finds that the motion raises substantial issues of law or fact must the court then hold a hearing in the presence of the defendant with defense counsel. *State v. Duke*, 263 Kan. at 196."

Since the language in K.S.A. 1993 Supp. 22-3717(f) regarding conversion is clear, there were no substantial issues of law or fact raised by Denney's argument. Accordingly, the trial court was correct in summarily dismissing his motion.

Denney next contends that the trial court erred in refusing to apply his jail time credit earned in 87 CR 944 to his sentences in 93 CR 1343 and 93 CR 1268. He calculates this credit to be 6 years, 3 months, and 8 days. The DOC's Inmate Data Summary for Denney states:

"9/20/02 Sent. reviewed and recertified. The inmates [*sic*] sentence begins date on the 36-life was computed from court orders. The old indeterminate is considered to be satisfied per Mandate. Since old sentence is not aggravated [*sic*] with the new sentence (being satisfied) there is no Prior Penal Credit."

Denney relies on *Payton v. State*, 22 Kan. App. 2d 843, 923 P.2d 1059 (1996), to support his argument. Payton, while on parole for an aggravated battery committed in 1991, committed robbery and possessed narcotics after July 1, 1993. Pursuant to K.S.A. 1993 Supp. 22-3717(f), he had his old indeterminate sentence converted to 12 months, which was to run consecutive to his new sentence. As the court stated: "This gave Payton a new sentence of 69

months' incarceration [57 (new) + 12 (original then converted)]." 22 Kan. App. 2d at 844.

Payton argued in a motion under K.S.A. 60-1507 that he should receive 3 years' jail time credit against the converted 12-month sentence, which effectively meant his sentence had been fully served. The trial court, however, held that only the unused portion of the sentence had been converted, and Payton still owed the 12 months. The Court of Appeals reversed, stating that inmates whose sentences are converted "are not required to serve the KSGA sentence in addition to the time already served, but are released if the jail time credit already exceeds the inmate's KSGA converted sentence." 22 Kan App. 2d at 847. Accordingly, "Payton is entitled to conversion of his entire indeterminate sentence, and given his time served, he has completed his sentence for the crimes committed in 1991." 22 Kan. App. 2d at 847.

*Payton* is of no assistance to Denney, however. The Court of Appeals expressly noted: "This decision, of course, does not affect the 57-month sentence imposed for the robbery and possession of narcotics convictions." 22 Kan. App. 2d at 848. *Campbell v. State,* 223 Kan. 528, Syl. ¶ 2, 575 P.2d 524 (1978), is more blunt: "A defendant is not entitled to credit on a sentence for time which he has spent in jail upon other, distinct, and wholly unrelated charges." See also *State v. Calderon,* 233 Kan. 87, 97, 661 P.2d 781 (1983) ("The provisions of K.S.A. 21-4614 are mandatory and require that a criminal defendant sentenced to incarceration be given credit for all time spent in custody solely on the charge for which he is being sentenced.").

Denney's indeterminate sentence was converted to a determinate one of 36 months in 87 CR 944. Because Denney had already served more than 36 months on that sentence, he had nothing left to serve on it. His jail time credit from that sentence, however, does not apply to sentences for other crimes in his other cases, 93 CR 1343 and 93 CR 1268. Clearly, no hearing with Denney and an appointed counsel present was needed to make this determination.

Issue 2: *Did the district court err in denying Denney's motion for DNA testing?*

Denney next argues that K.S.A. 2003 Supp. 21-2512 should be liberally construed to include DNA testing for those convicted of aggravated criminal sodomy. If the statute is not so construed, he argues it violates the Equal Protection Clause of the 14th Amendment to the United States Constitution. Essentially, he claims that the legislature's DNA testing distinctions between (1) those who are convicted of rape and (2) those who are convicted of aggravated criminal sodomy, can have no rational basis.

The State responds that the statute clearly applies only to convictions of murder and rape. In the alternative, it suggests that costs saved by untaken tests can be the rational basis for upholding the statute's constitutionality.

The interpretation of a statute is a question of law, and this court's review is unlimited. *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003). The statute at issue, K.S.A. 2003 Supp. 21-2512, states:

"(a) Notwithstanding any other provision of law, a person in state custody, at any time *after conviction for murder as defined by K.S.A. 21-3401, and amendments thereto, or for rape as defined by K.S.A. 21-3502, and amendments thereto*, may petition the court that entered the judgment for forensic DNA testing (deoxyribonucleic acid testing) of any biological material that:

(1) Is related to the investigation or prosecution that resulted in the conviction;

(2) is in the actual or constructive possession of the state; and

(3) was not previously subjected to DNA testing, or can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results.

"(b) (1) The court shall notify the prosecuting attorney of a petition made under subsection (a) and shall afford the prosecuting attorney an opportunity to respond.

(2) Upon receiving notice of a petition made under subsection (a), the prosecuting attorney shall take such steps as are necessary to ensure that any remaining biological material that was secured in connection with the case is preserved pending the completion of proceedings under this section.

"(c) The court shall order DNA testing pursuant to a petition made under subsection (a) upon a determination that testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced.

"(d) The cost of DNA testing ordered under subsection (c) shall be borne by the state or the petitioner, as the court may order in the interests of justice, if it is shown that the petitioner is not indigent and possesses the means to pay.

"(e) The court may at any time appoint counsel for an indigent applicant under this section.

"(f) (1) If the results of DNA testing conducted under this section are unfavorable to the petitioner, the court:

(A) Shall dismiss the petition; and

(B) in the case of a petitioner who is not indigent, may assess the petitioner for the cost of such testing.

(2) If the results of DNA testing conducted under this section are favorable to the petitioner, the court shall:

(A) order a hearing, notwithstanding any provision of law that would bar such a hearing; and

(B) enter any order that serves the interests of justice, including, but not limited to, an order:

(i) Vacating and setting aside the judgment;

(ii) discharging the petitioner if the petitioner is in custody;

(iii) resentencing the petitioner; or

(iv) granting a new trial.

(3) If the results of DNA testing conducted under this section are inconclusive, the court may order a hearing to determine whether there is a substantial question of innocence. If the petitioner proves by a preponderance of the evidence that there is a substantial question of innocence, the court shall proceed as provided in subsection (f)(2).

"(g) Nothing in this section shall be construed to limit the circumstances under which a person may obtain DNA testing or other postconviction relief under any other provision of law." (Emphasis added.)

The fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained, and when a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. *State v. Van Hoet*, 277 Kan. 815, 826, 89 P.3d 606 (2004).

The statute is unambiguous. It clearly provides in subsection (a) that it applies only to convictions for murder as defined by K.S.A. 21-3401 (first-degree murder) and for rape as defined by K.S.A. 21-3502. The trial court correctly denied the motion on this basis.

We turn next to Denney's alternative argument, *i.e.*, that the statute violates the Equal Protection Clause because there is no rational basis for authorizing DNA testing for those convicted of rape, and for not authorizing DNA testing for those convicted of aggravated criminal sodomy. This argument of unconstitutionality

was not raised at the trial court level in Denney's pro se motion but appeared in his counsel's brief to this court. Generally, where constitutional grounds are asserted for the first time on appeal, they are not properly before this court for review. *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999). We address it now, however, under an exception set forth in *State v. Mincey*, 265 Kan. 257, 267, 963 P.2d 403 (1998), specifically, that the newly asserted theory involves only a question of law arising on proven or admitted facts and is finally determinative of the case.

In *Mudd v. Neosho Memorial Regional Med. Center*, 275 Kan. 187, 197-98, 62 P.3d 236 (2003), we recently set forth a number of considerations when examining equal protection issues:

"As the party asserting a statute's unconstitutionality, claimant's burden is a 'weighty one.' [Citation omitted.] 'This is just as it should be, for the enacted statute is adopted through the legislative process ultimately expressing the will of the electorate in a democratic society.' [Citation omitted.] Consequently, while the determination of whether a statute violates the Constitution is a question of law over which we have unlimited de novo review, we have often held:

" ' "A statute is presumed constitutional, and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. A statute must clearly violate the Constitution before it may be struck down. [Citations omitted.] 'This court not only has the authority, but also the duty, to construe a statute in such a manner that it is constitutional if the same can be done within the apparent intent of the legislature in passing the statute.' [Citations omitted.]"

. . . .

"We affirm that the concept of equal protection of the law is one which ' "emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable." ' [Citation omitted.] However, under the rational basis test, 'a law is constitutional, despite some unequal classification of citizens, if the "classification bears some reasonable relationship to a valid legislative objective." ' [Citations omitted.]

"For a statute to pass constitutional muster under the rational basis standard, it therefore must meet a two-part test: (1) It must implicate legitimate goals, and (2) the means chosen by the legislature must bear a rational relationship to those goals. [Citations omitted.] We have previously described it as 'a very lenient standard' because, among other things,

" '[t]he 'reasonable basis test' is violated only if the statutory classification rests on grounds wholly irrelevant to the achievement of the State's legitimate objective. The state legislature is presumed to have acted within its constitutional power even if the statute results in some inequality. Under the reasonable basis test, a

statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' " [Citation omitted.]

"Accordingly, '[a] [party] asserting the unconstitutionality of a statute under the rational basis standard has the burden to negate every conceivable basis which might support the classification.' *Peden v. Kansas Dept. of Revenue,* 261 Kan. 239, Syl. ¶ 6, 930 P.2d 1 (1996), *cert. denied* 520 U.S. 1229 (1997)."

To see if K.S.A. 2003 Supp. 21-2512 passes constitutional muster when it provides for DNA testing for rape, while it excludes such testing for aggravated criminal sodomy, we must first examine the two crimes to determine if, under the facts of the instant case, they are "arguably indistinguishable."

K.S.A. 2003 Supp. 21-3502 addresses rape. It states:

"(a) Rape is: (1) Sexual intercourse with a person who does not consent to the sexual intercourse, under any of the following circumstances:

(A) When the victim is overcome by force or fear;

(B) when the victim is unconscious or physically powerless; or

(C) when the victim is incapable of giving consent because of mental deficiency or disease, or when the victim is incapable of giving consent because of the effect of any alcoholic liquor, narcotic, drug or other substance, which condition was known by the offender or was reasonably apparent to the offender;

(2) sexual intercourse with a child who is under 14 years of age;

(3) sexual intercourse with a victim when the victim's consent was obtained through a knowing misrepresentation made by the offender that the sexual intercourse was a medically or therapeutically necessary procedure; or

(4) sexual intercourse with a victim when the victim's consent was obtained through a knowing misrepresentation made by the offender that the sexual intercourse was a legally required procedure within the scope of the offender's authority.

"(b) It shall be a defense to a prosecution of rape under subsection (a)(2 that the child was married to the accused at the time of the offense.

"(c) Rape as described in subsection (a)(1) or (2) is a severity level 1, person felony. Rape as described in subsection (a)(3) or (4) is a severity level 2, person felony." (Emphasis added.)

K.S.A. 21-3506 defines aggravated criminal sodomy and contains a number of similarities to the definition of rape in K.S.A. 2003 Supp. 21-3502. It states:

"(a) Aggravated criminal sodomy is:

. . . .

(3) sodomy with a person who does not consent to the sodomy or causing a person, without the person's consent, to engage in sodomy with any person or an animal, under any of the following circumstances:

(A) When the victim is overcome by force or fear;

(B) when the victim is unconscious or physically powerless; or

(C) when the victim is incapable of giving consent because of mental deficiency or disease, or when the victim is incapable of giving consent because of the effect of any alcoholic liquor, narcotic, drug or other substance, which condition was known by the offender or was reasonably apparent to the offender.

"(b) It shall be a defense to a prosecution of aggravated criminal sodomy under subsection (a)(1) that the child was married to the accused at the time of the offense.

"(c) Aggravated criminal sodomy is a severity level 2, person felony."

Central to this analysis are the terms "sexual intercourse" from K.S.A. 2003 Supp. 21-3502 and "sodomy" from K.S.A. 21-3506. They are defined in K.S.A. 21-3501:

" 'Sexual intercourse' means any penetration of the female sex organ by a finger, the male sex organ or any object. Any penetration, however slight, is sufficient to constitute sexual intercourse. 'Sexual intercourse' does not include penetration of the female sex organ by a finger or object in the course of the performance of:

(a) Generally recognized health care practices; or

(b) a body cavity search conducted in accordance with K.S.A. 22-2520 through 22-2524, and amendments thereto." (Emphasis added.) K.S.A. 21-3501(1).

" 'Sodomy' means oral contact or oral penetration of the female genitalia or oral contact of the male genitalia; anal penetration, however slight, of a male or female by any body part or object; or oral or anal copulation or sexual intercourse between a person and an animal. 'Sodomy' does not include penetration of the anal opening by a finger or object in the course of the performance of:

(a) Generally recognized health care practices; or

(b) a body cavity search conducted in accordance with K.S.A. 22-2520 through 22-2524, and amendments thereto." (Emphasis added.) K.S.A. 21-3501(2).

In short, rape can consist of something less than voluntary consent to penetration of the female sex organ by the male sex organ, while aggravated criminal sodomy can consist of something less than voluntary consent to penetration of another female bodily orifice by the male sex organ. Here, Denney clearly committed the latter: penetrating his victims' anuses with his male sex organ. Accordingly, we hold that Denney, convicted of aggravated criminal sodomy under such circumstances, is arguably indistinguishable

from those people who are convicted of rape with the male sex organ.

With that threshold question resolved, we now turn to whether (1) K.S.A. 2003 Supp. 21-2512 implicates legitimate goals and (2) the means chosen by the legislature bear a rational relationship to those goals. See *Mudd,* 275 Kan. at 198.

There can be no doubt that the statutory goal is legitimate: to use DNA testing to help determine if one who is in state custody "was wrongfully convicted or sentenced" and if so, to vacate and set aside the judgment, discharge the person if in custody, resentence, or grant a new trial. See K.S.A. 2003 Supp. 21-2512(c) and (f)(2).

Turning to the second issue, while Denney argues there is no rational relationship between the legislature's goal and its means, the State suggested one rational basis at oral arguments. It argued that limiting the testing—to those convicted of first-degree murder and rape—was cost related.

We reject this as a rational basis. We have previously held that cutting costs to an industry is not a rational basis for discrimination. *Stephenson v. Sugar Creek Packing,* 250 Kan. 768, 780-82, 830 P.2d 41 (1992). See also *Aves v. Shah,* 258 Kan. 506, 526-27, 906 P.2d 642 (1995) (Cutting costs, by itself, is not a legitimate State interest, and the rational basis test is not met.).

Nevertheless, our search for a rational basis is not concluded. See *Mudd,* 275 Kan. at 198 (" ' "Under the reasonable basis test, a statutory discrimination will not be set aside *if any state of facts reasonably may be conceived* to justify it." ' " [Emphasis added.]). Our own research suggests, for example, that the legislature may have intended to allow postconviction DNA testing based on the severity of the crime.

Before examining this possibility, some background is required. In the spring of 2001, the legislature considered S.B. 263, which was designed to expand K.S.A. 21-2511. The bill proposed obtaining DNA samples from all convicted felons, not just sex offenders, for inclusion in the State's DNA database. See *Maass,* 275 Kan. at 329. The bill sponsor, Senator David Adkins, testified before the Senate and House Judiciary Committees that the expansion could

not only help solve and prevent crimes, but could also exonerate more innocent people than the current law.

Jane Nohr, an assistant attorney general assigned to the Kansas Bureau of Investigation (KBI), testified before the Senate Judiciary Committee, and Kyle Smith, also an assistant attorney general assigned to the KBI, repeated Nohr's presentation before the House Judiciary Committee. On behalf of the KBI, they requested that two amendments be added to S.B. 263, the first of which is relevant to our discussion. They stated:

"We would like to take this opportunity to bring up two possible amendments. First, as set out in Attachment A, Director Welch believes that the powerful tool of forensic DNA should be used to seek justice. That includes freeing the innocent as well as convicting the guilty. There has been considerable media coverage on a few cases around the country where persons were wrongfully convicted of offenses before DNA technology was available and the evolution of that technology has resulted in their freedom. While those of you involved in the appropriations process realize how limited our resources are in the laboratory, *we would like to recommend the adoption of the amendment described in Attachment A, which will provide for a mechanism that persons convicted for the most serious offenses, i.e., murder and rape, could petition the court for post-conviction analysis to be conducted by the KBI.* If the defendant is indigent, the state of Kansas would bear the cost of the analysis. We believe that every safeguard is currently employed to assure the validity of the conviction, [but] that if we have the wrong person in prison, we believe it is incumbent on all of us to take what steps we can to assure that justice is done." Minutes, Sen. Judiciary Comm., February 28, 2001, Attach. 6; Minutes, House Judiciary Comm., March 19, 2001. (Emphasis added.)

The legislature passed Senator Adkins' amendment to K.S.A. 21-2511, extending its reach to include DNA sampling of all those convicted of person felonies. It also passed the KBI's recommendation in the form of K.S.A. 2003 Supp. 21-2512, except it eliminated second-degree murder (K.S.A. 2003 Supp. 21-3402) from the KBI's proposal. Both then became law.

As we examine the proposed rational basis of crime severity, we observe that aggravated criminal sodomy is, in all cases, a severity level 2 person felony. See K.S.A. 21-3506(c). By contrast, rape by force or fear is a severity level 1 person felony. See K.S.A. 2003 Supp. 21-3502(c). While these differences in severity level could be a rational basis for distinguishing between when DNA testing is allowed and when not, we also observe that aggravated criminal

sodomy has the same severity level, 2, as rape when consent was obtained by "knowing misrepresentation." See K.S.A. 2003 Supp. 21-3502(a)(3) and (4). Crimes within each severity level are considered relatively equal in severity. K.S.A. 21-4707(a). However, DNA testing is allowed by statute for convictions of rape but not aggravated criminal sodomy.

Accordingly, we cannot conclude that crime severity level is a rational basis for the different treatment of these arguably indistinguishable groups: (1) those convicted of penetration of the female sex organ by the male sex organ when consent was obtained through knowing misrepresentation and (2) those convicted of penetration of the female anus by the male sex organ through force or fear. Both groups concern something less than voluntary consent, by the female, to penetration of one of her orifices by the male sex organ.

Nor have we been presented with, nor have we found, any rational basis for allowing DNA testing for the rapists and not for Denney, who was convicted of aggravated criminal sodomy for penetrating his victims' anuses with his penis. In short, K.S.A. 2003 Supp. 21-2512 is unconstitutional because it fails to include Denney's specific situation.

The question of remedy for this underinclusion remains. As explained in *Califano v. Westcott,* 443 U.S. 76, 89, 61 L. Ed. 2d 382, 99 S. Ct. 2655 (1979):

" 'Where a statute is defective because of underinclusion', Mr. Justice Harlan noted, 'there exist two remedial alternatives: a court may either declare [the statute] a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by the exclusion.' *Welsh v. United States,* 398 U.S. 333, 361 (1970) (concurring in result)."

As a Note in the Harvard Law Review has explained:

"Though the test is imprecise, a court must weigh the general interest in retaining the statute, against the court's own reluctance to extend legislation to those not previously covered. Such an inquiry may lead a court into examination of legislative purpose, the overall statutory scheme, statutory arrangements in connected fields, and the needs of the public." Note, *Developments in the Law—Equal Protection,* 82 Harv. L. Rev. 1065, 1136-37 (1969).

Stated another way, "[the court] must look at the importance of the statute, the significance of the exemption within the over-all statutory scheme, and the effects of striking down the statute." *People v. Liberta,* 64 N.Y.2d 152, 171, 474 N.E.2d 567 (1984). In sum, the "court's task is to discern what course the Legislature would have chosen to follow if it had foreseen our conclusions as to underinclusiveness." 64 N.Y.2d at 171.

We find the equal protection cases of *Westcott* and *Liberta* instructive in choosing between these two remedial alternatives. In *Westcott,* the United States Supreme Court addressed § 407 of the Social Security Act, as amended, 42 U.S.C. § 607 (1976), part of the Aid to Families with Dependent Children program. The statute provided benefits to families whose dependent children have been deprived of parental support because of the unemployment of the father but did not provide such benefits when the mother became unemployed. The federal district court found that the gender qualification of § 407 was not substantially related to the achievement of any important governmental interests. As a remedy, instead of invalidating the entire statute, it chose to extend the program to all families with needy children where either parent was unemployed.

On appeal, the Secretary of the Department of Health, Education and Welfare challenged the holding of the unconstitutionality of § 407. Among other things, the Secretary argued the gender distinction imposed by § 407 survived constitutional scrutiny because it was substantially related to achievement of one or more important governmental objectives. It identified two important objectives.

First, in general, the statute was intended to provide aid for children deprived of basic sustenance because of a parent's unemployment. Second, and more specifically, reducing the incentive for the father to desert the family was an important objective of the program, and the gender qualification was substantially related to achieving that objective. While the Court readily agreed with the Secretary's first contention, it rejected the second. It found that the gender qualification had little, if anything, to do with reducing the father's incentive to desert; it also found that even if

the actual purpose of the gender qualification was to deal with the problem of desertion, it did not appear that the classification was substantially related to the achievement of that goal. Accordingly, it concluded that the gender classification of § 407 was not substantially related to the attainment of any important and valid statutory goals and was, therefore, unconstitutional. 443 U.S. at 85-89.

The *Westcott* Court then turned to the remedy. It observed that "[i]n previous cases involving equal protection challenges to underinclusive federal benefits statutes, this Court has suggested that extension, rather than nullification, is the proper course." 443 U.S. at 89. The Supreme Court further observed that an injunction suspending the program's operation, *e.g.*, nullification, would impose hardship on 300,000 beneficiaries whom Congress plainly meant to protect. 443 U.S. at 90. Indeed, there was no dispute between the parties regarding the merits of extension of the statute versus its invalidation.

*Westcott* is instructive because, like the instant case, it concerns issues of underinclusion of "benefits" (there, financial aid to children; here, DNA testing). However, it concerned gender discrimination, which warranted a higher level of scrutiny than rational basis.

*People v. Liberta*, 64 N.Y.2d 152, also concerned issues of underinclusion. It is primarily instructive because, like the instant case, it included application of the rational basis test.

There, New York's highest court, its Court of Appeals, addressed § 130.35 and § 130.50 of its Penal Law concerning forcible rape and forcible sodomy, respectively. Due to "not married" language in the statutes, there was a "marital exemption" for both crimes, *i.e.*, a married man ordinarily could not be convicted of forcibly raping or sodomizing his wife. Liberta argued to the lower courts that both statutes violated equal protection because they were underinclusive classifications which burdened him but not others similarly situated (burdened all males except those within the marital exemption). He argued that the rape statute further violated equal protection because it provided that only males could be convicted of rape in the first degree. The lower courts rejected Liberta's constitutional arguments.

The Court of Appeals affirmed the conviction but rejected the constitutional analysis of the lower courts. It joined the overwhelming majority of courts to hold there was no rational basis for distinguishing between marital rape and nonmarital rape and declared the marital exemption for rape in the statute to be unconstitutional. 64 N.Y.2d at 163-64, 167. It also held that the rape statute's exemption for females violated equal protection because the discrimination not did meet the intermediate level of scrutiny: it was not substantially related to the achievement of an important governmental objective. 64 N.Y.2d at 167-70.

Having found that the statutes for rape and sodomy in the first degree were unconstitutionally underinclusive, the court addressed the issue of remedy. It observed: "When a statute is constitutionally defective because of underinclusion, a court may either strike the statute, and thus make it applicable to nobody, or extend the coverage of the statute to those formerly excluded." 64 N.Y.2d at 170. As the court explained:

"The question then is whether the Legislature would prefer [1] to have statutes which cover forcible rape and sodomy, with no exemption for married men who rape or sodomize their wives and no exception made for females who rape males, or [2] instead to have no statutes proscribing forcible rape and sodomy." 64 N.Y.2d at 171.

The court concluded that the marital and gender exemptions must be read out of the statutes prohibiting forcible rape and sodomy. Among other things, it held that the legislature, if faced with the choice, would probably extend the prohibition of rape to married persons, rather than abolish the crime altogether, and thus chose to leave intact that portion of the statute under which the defendant was convicted. 64 N.Y.2d at 170-73. The court acknowledged that this action enlarged the scope of the two criminal statutes, but observed that other states in numerous cases had applied the "same principles in eliminating an unconstitutional exception from a criminal statute and thereby enlarging the scope of the statute." 64 N.Y.2d at 172 (see cases cited there).

To paraphrase the *Liberta* court, the question before us is whether the Kansas Legislature would prefer to have statutes which cover DNA testing for those convicted of aggravated crim-

inal sodomy like Denney, or instead to have no statutes providing for postconviction DNA testing. To help answer this question, we first consider the legislative purpose. See Note, 82 Harv. L. Rev. at 1137. If we declare K.S.A. 2003 Supp. 21-2512 a nullity, then the laudable purpose of the statute expressed by its author, the Director of the Kansas Bureau of Investigation, is lost: to seek justice by freeing the innocent through postconviction DNA testing. We next consider the public's needs. See Note, 82 Harv. L. Rev. at 1137. In that regard, we also agree with the KBI Director: "[I]f we have the wrong person in prison, we believe it is incumbent on all of us to take what steps we can to assure that justice is done."

As an additional consideration, we also examine the overall statutory scheme. See Note, 82 Harv. L. Rev. at 1137. Toward that end, we note that exoneration of the innocent is not only the purpose of K.S.A. 2003 Supp. 21-2512, but also that this purpose is one of several found in K.S.A. 2003 Supp. 21-2511. In his presentation to the Senate and House Judiciary Committees, Senator Adkins, the sponsor of S.B. 263 to extend K.S.A. 21-2511, stated that simply increasing the inmate DNA database from sex offenders to all those convicted of person felonies "would reduce the occurrence of innocent people who are wrongly suspected, arrested, and convicted of crimes they did not commit." Minutes, Sen. Judiciary Comm., February 28, 2001, Attach. 5. He explained that these results could occur by having comparing DNA samples from both the guilty party and the innocent party (whose profiles were already in the database due to previous convictions) and matching them against DNA evidence from the crime scene.

In short, Kansas' obvious commitment to exoneration of the innocent through DNA—both sampling and later testing—would be severely reduced if we nullify K.S.A. 2003 Supp. 21-2512. On the other hand, if we extend the statute's coverage to include situations such as Denney's, we have increased the chances of freeing the innocent.

Our choice is clear: K.S.A. 2003 Supp. 21-2512 should not be nullified but rather extended to include testing for conduct like Denney's.

The decision of the trial court is affirmed in part, reversed in part, and remanded to that court for further determination of whether Denney meets the remaining qualifications for DNA testing under the statute.

MCFARLAND, C.J., concurring in the result.