NOT DESIGNATED FOR PUBLICATION

No. 126,875

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GREGORY MARK GEORGE JR.,
*Appellant*.


MEMORANDUM OPINION

Appeal from Leavenworth District Court; CLINTON LEE, judge. Submitted without oral argument. Opinion filed July 12, 2024. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.


Before COBLE, P.J., SCHROEDER and CLINE, JJ.


PER CURIAM: Gregory Mark George Jr. seeks additional DNA testing under K.S.A. 21-2512 as part of his efforts to set aside his criminal convictions. But since the 10 fibers he seeks to test were already subjected to DNA testing after his prior motion for DNA testing was granted, and he is not requesting a new testing technique be used, we find the district court correctly denied his motion for additional testing.

1

FACTUAL AND PROCEDURAL BACKGROUND

George has pursued multiple postconviction remedies after a jury convicted him in 2006 of rape, aggravated robbery, and aggravated intimidation of a witness, crimes he committed in December 2004. As pertinent to this appeal, he moved for DNA testing under K.S.A. 21-2512 in 2013. In maintaining his innocence, he asked for previously untested hairs gathered from the crime scene be tested against the DNA profile of the rape victim's boyfriend. While the district court initially denied George's motion, the Kansas Supreme Court reversed and remanded that case in 2018. *State v. George*, 308 Kan. 62, 75, 418 P.3d 1268 (2018).

On remand in 2019, the district court granted George's motion for DNA testing. The following year, evidence was submitted to the Serological Research Institute (the Institute) to be tested. The Institute completed an analytical report in 2021. The report stated it received 10 paper bindles each containing a fiber. It analyzed the fibers and decided one fiber was not hair and another was nonhuman hair. After excluding these two fibers, the Institute still had eight human hairs left for polymerase chain reaction (PCR) DNA testing. It selected one hair for testing which was about 4 centimeters long and had a root end of the hair and a portion of the adjacent hair shaft. The Institute sampled and extracted this hair for DNA but was unable to recover any DNA from the hair root. And since there was only a trace amount of DNA in the hair shaft, it could not create a DNA profile.

After receiving these inconclusive results, George voluntarily dismissed his motion, through appointed counsel, because "only one hair root was sufficient to attempt DNA testing. A trace amount of DNA was recovered, and that amount was insufficient to obtain a DNA profile." George then filed a new K.S.A. 21-2512 motion on his own behalf. The State opposed George's motion, and the district court appointed new counsel

2

to represent him. George's new counsel filed a response to the State's brief, requesting DNA testing of the eight hairs which were not selected for testing.

The district court denied the motion because both parties agreed "the hair sample did not contain enough DNA to make a comparable sample." The court also found "that no evidence exists that can produce a DNA result therefore there is no evidence that exists to be DNA tested." George appealed this decision, but it was later dismissed.

For a third time, George moved, again on his own behalf, for DNA testing under K.S.A. 21-2512. This time, he requested the nine fibers not PCR tested be subject to STR DNA testing. In its response, the State pointed out that all 10 fibers had been subjected to DNA testing. It noted that George's counsel stated in the voluntary dismissal of George's first motion for DNA testing that the hairs were all tested and "'only one hair root was sufficient to attempt DNA testing.'" George filed an addendum to his motion arguing only one fiber had been "subjected to" DNA testing under K.S.A. 21-2512. The district court appointed George another attorney who filed a supplemental motion for DNA testing which requested both short tandem repeat (STR) and mitochondrial DNA (mtDNA) testing on eight fibers. In the supplemental motion, George's counsel conceded STR and mtDNA testing are not "new" testing techniques because courts accepted both testing methods in the early 2000s.

The district court denied both motions because the fibers George requested to be tested were already subjected to testing and the STR and mtDNA testing were not new DNA techniques that could provide a more accurate and probative result than PCR testing.

George appeals this decision.

3

District courts must follow three steps under K.S.A. 21-2512 when a qualified inmate requests DNA testing on biological material. It must notify the prosecuting attorney, determine whether the material qualifies for testing, and assess whether the testing may produce relevant, noncumulative, exculpatory evidence. *State v. Hernandez*, 303 Kan. 609, 615, 366 P.3d 200 (2016). In contention is whether the district court erred in determining "'whether the biological material sought to be tested qualifies for testing under K.S.A. 21-2512(a)(1)-(3).'" 303 Kan. at 615 (quoting *State v. Lackey*, 295 Kan. 816, 820-21, 286 P.3d 859 [2012]). To qualify for DNA testing under K.S.A. 21-2512(a)(3), the statute requires that either (1) the biological material has never been subjected to testing or (2) the material could be retested with new and improved techniques. *Lackey*, 295 Kan. at 821-22.

Here, George requested retesting so he must show the hairs were "not previously subjected to DNA testing" or the existence of "new DNA techniques that provide a reasonable likelihood of more accurate and probative results." K.S.A. 21-2512(a)(3).

A. *Standard of review*

The parties agree the district court summarily denied George's and his attorney's motions without an evidentiary hearing. Kansas courts have held a summary denial of such a motion presents a question of law over which an appellate court has unlimited review. *Wimbley v. State*, 292 Kan. 796, 809, 275 P.3d 35 (2011). We also employ an unlimited review of the district court's interpretation of K.S.A. 21-2512. See *State v. Stoll*, 312 Kan. 726, 736, 480 P.3d 158 (2021).

B. *Analysis*

    1. *The district court did not apply collateral estoppel to deny George's claim.*

    George contends the district court applied an improper rule of law by using common-law estoppel to deny relief to him under K.S.A. 21-2512. He spends most of the analysis section in his brief on this point. But George's argument is problematic for several reasons. First, George cherry-picks a few words from the district court's ruling which he contends means the court employed "a res judicata approach to DNA science." Specifically, George challenges the district court's use of the term "bite at the apple" and the word "estopped." The district court concluded that under K.S.A. 21-2512(a)(3), George should not "get another 'bite at the apple' since he did not get the results he had hoped for after the first round of testing." In its final sentence in its analysis section, the district court noted it found George "is *estopped* from requesting STR and/or mtDNA testing." (Emphasis added.)

    Most of George's appellate argument is rooted in this one saying and one word used by the district court, but he places a particular focus on the district court's use of the word estopped. George contends the word estopped means the court applied some form of the common-law estoppel doctrine. He tries to breakdown the court's use of this word by determining whether the district court meant estoppel by election, collateral estoppel, or equitable estoppel.

    But George put too much weight into a few words written by the district court. Nowhere in the court's decision did it note it was applying collateral estoppel to K.S.A. 21-2512 or George's motion. Although the district court could have used a more precise term than estopped, especially considering that term can be legally operative in other contexts, that stray comment does not accurately describe the basis for its decision nor was it necessarily improper. For instance, Black's Law Dictionary 691 (11th ed. 2019)

5

notes estoppel can mean: "A bar that prevents one from asserting a claim." K.S.A. 21-2512 bars qualified inmates from petitioning the court for DNA testing if the biological material was "previously subjected to" testing. And it also bars inmates from seeking retesting of those materials if there are no "new DNA techniques." The district court's use of the word estopped is accurate even without applying any estoppel doctrine.

We do not read the district court's decision the same way George does, especially considering the precise location in its decision where it noted George is estopped from successfully bringing a third K.S.A. 21-2512 motion. The district court addressed George's "new DNA techniques" arguments in one paragraph. And in the following paragraph, it determined he was barred or estopped from the fibers being tested because K.S.A. 21-2512(a)(3) mandates the testing must be new. It noted George should not "get another bite at the apple" because his attorneys did not initially request STR and mtDNA testing even though those techniques were available at the time of George's request. Simply because the district court said "estopped" or "bite at the apple" does not mean it was applying collateral estoppel to its analysis. Rather, a close reading of the district court's decision shows it used those words to show K.S.A. 21-2512(a)(3) bars George from retesting because he is not requesting testing with new DNA techniques.

In addressing the district court's decision and its use of the word estopped, George makes stray comments framing K.S.A. 21-2512 as largely permitting unlimited DNA testing. He states the statute does not limit timing, testing, and methods and allows "for successive testing of available materials." Since in George's eyes K.S.A. 21-2512 essentially grants inmates unlimited DNA testing motions, "[t]here is no statutory bar on successive motions." He thus believes it does not matter if this is his third K.S.A. 21-2512 motion.

George's framing of the statute is incorrect. Although the statute does not expressly discuss successive motions, the statute is clearly written to authorize motions

6

for DNA testing only *if* the motion meets K.S.A. 21-2512(a)(1)-(3). So even if the statute is written to generally allow for DNA testing motions, the statute itself significantly limits inmates' ability to petition for testing. Part of that limitation is disallowing inmates to petition for additional DNA testing if the biological material was previously subjected to DNA testing. Thus, inmates' (as George frames it) successive K.S.A. 21-2512 motions can be denied if the material was previously tested and there are no new DNA techniques that would provide a reasonable likelihood of more accurate and probative results.

George's reading of the district court's opinion is unreasonable and far removed from what the court stated. And we do not believe his argument that K.S.A. 21-2512 essentially permits unrestricted DNA testing is supported by the language of the statute.

2. *All 10 fibers were subjected to DNA testing by the Institute even if all 10 fibers did not undergo PCR testing.*

After the district court approved George's request for DNA testing in a previous motion, the Institute tested 10 fibers for DNA. One fiber appeared not to be hair and another fiber appeared to be nonhuman hair. Eight fibers remained after these two fibers were excluded. Ultimately, one fiber with the root end of the hair and portion of the adjacent hair shaft was sampled and extracted for DNA. Although the report from the Institute did not expressly state the remaining seven hairs were unsuitable for testing, George's counsel represented to the district court in his motion to voluntarily dismiss that "only one hair root was sufficient to attempt DNA testing." When George brought his second K.S.A. 21-2512 motion, he also agreed "the hair sample did not contain enough DNA to make a comparable sample," and therefore, "no evidence exists that can produce a DNA result." And on appeal, he also does not seem to contest the technician ruled out the remaining seven fibers as unsuitable for the PCR technique.

After these testing results came back and George voluntarily dismissed his motion, he again moved under K.S.A. 21-2512 for DNA testing. He requested DNA testing for all the fibers not PCR tested, which would be nine fibers. He asserted below the fibers were not "subjected to" DNA testing, as required by the district court's order for DNA testing. But the district court determined eight fibers (not including the nonhair and nonhuman hair fibers) were all subjected to DNA testing because "only one hair was deemed a viable candidate to contain DNA material."

George strings together several statements to bolster his argument that only one fiber was subjected to DNA testing. He first contends the district court undermined the Legislature by not interpreting the ordinary and common meaning of K.S.A. 21-2512's language. See generally *Brown v. U.S.D. No. 333*, 261 Kan. 134, 141-42, 928 P.2d 57 (1996); *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, Syl. ¶¶ 7-8, 834 P.2d 368 (1992). To connect these cases to his own, George makes a statutory interpretation argument. George asserts that under Merriam-Webster's Collegiate Dictionary 1243 (11th ed. 2005), "'subjected'" means the subject is "'to cause or force to undergo or endure (something unpleasant, inconvenient or trying),'" to show the remaining fibers were not "subjected to" DNA testing under K.S.A. 21-2512. George believes this interpretation means the non-PCR tested fibers were not subjected to DNA testing under K.S.A. 21-2512 "even if they were examined—and eliminated by the technician—as to suitability for a particular technique."

But even under George's provided definition, the district court correctly determined the seven hairs underwent and endured testing. As the State persuasively put it: "While it is accurate to say that 7 fibers were not subjected to the PCR test, this is not the same as saying the 7 fibers were not subjected to DNA testing." The remaining fibers were "cause[d] or force[d]" to undergo an examination for DNA by George's previous motion for DNA testing. And as the State argues, all testing by its nature, involves a form of an examination, experiment, or trial. The technician examined all 10 fibers for DNA

8

testing but only PCR tested 1. Thus, even if we adopt George's submitted definition of "subjected to," all 10 fibers were subjected to DNA testing because the fibers were examined by the technician.

He finally states that the statute does not permit district courts "to determine the viability of future testing of available biological materials." The district court, however, did not determine whether the eight fibers would produce future viable DNA testing. Instead, it simply concluded the eight fibers were subjected to testing but were unviable candidates for PCR tests. Although the district court pontificated that approving George's motion would be futile, which in a way implies the DNA testing would be unsuccessful, it nevertheless correctly held the seven fibers were subjected to DNA testing previously.

3. *George's motion cannot be granted because STR and mtDNA testing are not new DNA testing techniques.*

George demands STR and mtDNA testing be completed on all eight hairs. But the testing he requests does not include "new DNA techniques that provide a reasonable likelihood of more accurate and probative results." K.S.A. 21-2512(a)(3).

The district court concluded STR and mtDNA testing were not new testing methods because both were available in the early 2000s. See, e.g., *State v. Pappas*, 256 Conn. 854, 878 n.6, 776 A.2d 1091 (2001) (finding, as of 2001, "[a]ll of the state appellate courts that have considered the methodology of mtDNA analysis in criminal trials thus far have concluded that it is scientifically valid and admissible"); *People v. Shreck*, 22 P.3d 68, 82 (Colo. 2001) (en banc) (finding STR DNA testing reliable). Meaning, George could have selected one of these techniques when he retained the Institute to examine the fibers.

On appeal, George maintains the district court misinterpreted the word new in K.S.A. 21-2512. He posits that under the statute, the Legislature intended "'new'" to be synonymous with "'different.'" He urges this panel to accept this different definition of new because "the Legislature has not provided a definitive definition" of the word. To explain his interpretation, he states that a person may buy a factory new model car, or a person may buy a used car. In either scenario, George believes the car is new. He argues the statute necessarily contemplates this flexible meaning because "[t]he nature of science" requires it. This approach is wrong for several reasons.

"An appellate court's first task is to 'ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning.'" *Padron v. Lopez*, 289 Kan. 1089, 1097, 220 P.3d 345 (2009) (quoting *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 [2007]). The ordinary meaning of new is not defined as different. See Black's Law Dictionary 1253 (11th ed. 2019) (defining new as "recently come into being," "recently discovered," "changed from the former state," "[u]nfamiliar; unaccustomed," or "[b]eginning afresh"). George implores this panel to follow K.S.A. 21-2512(a)(3)'s ordinary meaning and even cites Black's Law Dictionary's definition of new. But the ordinary meaning of "new" is not "different" nor does Black's state that. If the Legislature wanted K.S.A. 21-2512 to use the word "different" instead of the word "new," it would have.

Besides the ordinary meaning, the word new, as interpreted like "factory new model," makes more sense in the statutory scheme than new, as read like "used car." The sentence itself allows for retesting of biological material with new methods if those techniques would lead to "more accurate and probative results." K.S.A. 21-2512(a)(3). George's interpretation requires us to read words in K.S.A. 21-2512 in an isolated fashion. Appellate "courts are not permitted to consider only a certain isolated part or parts of an act but are required to consider and construe together all parts." *Kansas Commission on Civil Rights v. Howard*, 218 Kan. 248, Syl. ¶ 2, 544 P.2d 791 (1975). By

10

reading the statute in George's preferred way, inmates would be encouraged to begin their requests for DNA testing with methods of minimal accuracy and probative value. And then inmates would continually move for more different DNA testing, each time asking for the biological material to be tested with methods slightly more accurate and probative. Effectively, George's interpretation of the statute would lead to inmates receiving unlimited testing so long as they begin their request with less accurate and probative testing methods. George's interpretation requires us to read the word new in isolation which is not only inappropriate under Kansas' statutory interpretation caselaw, but it also leads to an absurd result.

He also argues the district court's interpretation of new thwarts "the statute's goal of freeing the innocent." It is true the Kansas Supreme Court has found K.S.A. 21-2512's "statutory goal is to use DNA testing to help determine if one who is in state custody 'was wrongfully convicted or sentenced.'" *State v. Smith*, 34 Kan. App. 2d 368, 371, 119 P.3d 679 (2005) (quoting *State v. Denney*, 278 Kan. 643, 654, 101 P.3d 1257 [2004]). But this court cannot accept every possible interpretation under the umbrella in the name of preserving a broad statutory goal. And if the ordinary meaning of the word new frustrates George's particular argument, that does not mean it foils K.S.A. 21-2512's general purpose.

Lastly, he maintains that since we could apply two definitions of new, we should adopt his definition under the rule of lenity. He notes that under Kansas caselaw, the rule of lenity requires this panel "to strictly construe ambiguous criminal statutes in favor of the accused." *State v. Horn*, 288 Kan. 690, 693, 206 P.3d 526 (2009). But he is incorrect to ask us to apply this rule. There is a nothing ambiguous about the word new as used in K.S.A. 21-2512. Not only does the ordinary meaning of new not support George's argument, but assessing the word through his isolated lens produces an incoherent reading of the statute. The rule of lenity, consequently, is inapplicable because the statute is not ambiguous.

Affirmed.