NOT DESIGNATED FOR PUBLICATION

No. 127,818

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JASE DEREK STANTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; KENDRA S. LEWISON, judge. Submitted without oral argument. Opinion filed February 6, 2026. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ISHERWOOD, P.J., CLINE and COBLE, JJ.

PER CURIAM: In 2020, Jase Derek Stanton filed a motion for postconviction DNA testing and requested a new trial on his 2017 conviction for aggravated criminal sodomy. The district court denied relief, finding the results were inconclusive and did not warrant an evidentiary hearing. Stanton appeals. On our review, we find no abuse of discretion and affirm the district court's decision.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 2015, the State charged Stanton with multiple counts of aggravated criminal sodomy against three adult male victims—L.B., T.A., and A.V.—who lacked the ability to consent because they were unconscious or physically powerless at the time. The State later dismissed the charge involving A.V. and the case ultimately went to a bench trial in February 2017, at which the trial judge found Stanton guilty of the charge involving L.B. and acquitted him of the charge involving T.A.

A full recitation of the circumstances of the case is set out in this court's decision affirming Stanton's conviction on direct appeal, which upheld the admission of evidence that Stanton was previously convicted of aggravated sexual battery and had been acquitted three times in military trials under similar circumstances. *State v. Stanton*, No. 118,255, 2018 WL 4039400, at *1-3 (Kan. App. 2018) (unpublished opinion). But as this court explained, this "case essentially boiled down to a credibility determination between L.B. and Stanton." 2018 WL 4039400, at *5. Highly summarized, L.B. testified that he woke up while sleeping on Stanton's couch after a night of partying to discover Stanton sitting on top of him engaging in penetrative sex. L.B. managed to get away from Stanton and went into the bathroom, then left the residence later that morning to report the sexual assault. Stanton, on the other hand, testified that all actions with L.B. were consensual.

During trial, a State DNA expert testified that DNA profiles consistent with Stanton and an unknown contributor were detected on swabs collected from three areas on L.B.'s body during a sexual assault examination. Two in particular bear relevance in this appeal. First, a swab from the head of L.B.'s penis contained a DNA mixture of profiles consistent with at least three individuals:  L.B., Stanton, and one of "insufficient information, so there's not enough there . . . to make a determination." Finally, another swab taken from L.B.'s anus contained a DNA mixture of profiles consistent with two

2

individuals: L.B. and an "unknown" contributor for which there was "a partial profile and it did not match the known profiles . . . obtained from any of unknowns in the case."

The DNA expert elaborated on the difference between "insufficient information" and "unknown":

> "Unknown means that I have either a partial or a full DNA profile. I have enough to make a comparison and it just doesn't match any of the profiles that I obtained from the known samples that I have. Insufficient means that even if it matched one of those people I wouldn't be able to say because there is not enough information to make that call."

About a year after the mandate issued in Stanton's direct appeal, he filed a motion for postconviction DNA testing of numerous items that were not originally subjected to DNA testing, as well as retesting of the swabs collected during the sexual assault examinations of L.B. and the other alleged victims using a different method in the hopes of identifying any unknown individuals whose DNA was present. Stanton argued that the additional DNA testing would impeach L.B.'s credibility on the issue of consent and support Stanton's claim that L.B. "expressed to him that he suffered from suppressing his homosexual identity and that they engaged in consensual homosexual conduct."

The State initially opposed the request but later acquiesced, leading to the district court's November 2021 order for additional DNA testing of the swabs collected from L.B.'s body, as well as a genital swab collected from T.A. A different judge made this order than the one who handled Stanton's conviction and sentencing. A subsequent agreed-upon order authorized the testing to be completed by the Serological Research Institute (SERI).

In February 2023, Stanton filed a memorandum arguing for the district court to find the DNA testing results from SERI "favorable" and grant him a new trial under

K.S.A. 21-2512(f)(2), or alternatively to find the results were "inconclusive" and raised a substantial question of innocence, also meriting a new trial under K.S.A. 21-2512(f)(3). The State filed a response opposing Stanton's requests in April 2023.

After reviewing the DNA results from SERI and considering the parties' arguments, the district court concluded the results were inconclusive and declined to hold an evidentiary hearing, finding that "[t]here is no substantial question of innocence." In its order, the court emphasized it had only considered "the evidence related to the DNA testing of the swabs taken from [L.B.]'s body," which amounted to comparing the KBI testing results and related trial testimony to the SERI testing results.

In sum, the district court found that the SERI results related to L.B.'s anal swab were inconclusive because it was "already known at the time of trial based on the KBI testing that a partial DNA profile foreign to [L.B.]'s was found in the anal swab, and that profile was consistent with being from an unknown male contributor." As for the results related to L.B.'s penile swab, the court found the results were "a bit more complicated, but still inconclusive" because they contradicted L.B.'s description of "the incident as not involving ejaculation." Yet, the court noted L.B. would not have been "aware of all of the possibilities of how DNA was deposited on his body" since he "was asleep when the sexual activity occurred."

The district court then explained its rationale for not holding an evidentiary hearing because the inconclusive results did not raise a substantial question of innocence:

> "Unlike a jury verdict, where we seldom know the mindset of the jurors or the specific reasons for their decisions, we do know the trial court's reasoning for the guilty finding. The trial judge announced the decision and reasoning on the record. The trial judge specifically mentioned concerns about Mr. Stanton's changing story in evaluating his credibility. He also specifically mentioned the testimony of the witnesses who alleged non-consensual sexual acts perpetrated on them by Mr. Stanton. Although little weight

4

was given to the allegation of [Z.T.] (the case that resulted in an acquittal in a military tribunal), the testimony of the other three victims contributed to convincing the trial court that Mr. Stanton was guilty beyond a reasonable doubt. Absent from the trial court's reasoning is any mention that the court believed that [L.B.] was not sexually interested in men. If that was a factor in the deliberations, it was not so important that it was mentioned by the trial judge.

"In light of the fact that the KBI testing had already identified the existence of foreign male DNA on the anal swab, the new results added very little, if anything, to advance Mr. Stanton's contention that [L.B.] consented to the sexual conduct. There is no need for a hearing. There is no substantial question of innocence. Even if the Court considered the results to be favorable to Mr. Stanton, they are not of such materiality that a reasonable probability exists that the new evidence would result in a different outcome at a trial."

Stanton timely appealed.

ANALYSIS

*The district court did not abuse its discretion by not conducting an evidentiary hearing.*

The sole issue Stanton raises on appeal is whether the district court should have held an evidentiary hearing to determine whether the inconclusive results of postconviction DNA testing raised a substantial question of his innocence.

K.S.A. 21-2512 allows individuals convicted of first-degree murder or rape to petition for postconviction DNA testing when they meet certain statutory requirements. As Stanton notes, the Kansas Supreme Court has extended the scope of this statute on equal protection grounds to individuals convicted of aggravated criminal sodomy. See *State v. Denney*, 278 Kan. 643, 652-56, 101 P.3d 1257 (2004) (explaining the crimes are arguably indistinguishable and finding no rational basis for treating similarly situated individuals differently). That said, whether Stanton was allowed to file a claim for relief

5

under K.S.A. 21-2512 is not in dispute, so we need not address that question to resolve this appeal.

Under the statutory framework, a district court "shall order DNA testing pursuant to a petition made under subsection (a) upon a determination that testing may produce noncumulative, exculpatory evidence relevant to the claim of the petitioner that the petitioner was wrongfully convicted or sentenced." K.S.A. 21-2512(c). As above, whether the district court properly ordered DNA testing is not disputed, given that the district court's order was based on the parties' agreement.

Once a petition has been granted and the DNA testing results are available, K.S.A. 21-2512(f) specifies mandatory dispositions and procedural requirements depending on how the results are characterized: (1) unfavorable, (2) favorable, and (3) inconclusive. See also *State v. Edwards*, 311 Kan. 879, 887, 467 P.3d 484 (2020); *Haddock v. State*, 282 Kan. 475, 495, 146 P.3d 187 (2006). When, as here, the district court determines the results are inconclusive, the statute provides "the court *may* order a hearing to determine whether there is a substantial question of innocence." (Emphasis added.) K.S.A. 21-2512(f)(3). If a court chooses to hold an evidentiary hearing, the defendant must prove by a preponderance of the evidence that there is a substantial question of their innocence. K.S.A. 21-2512(f)(3).

Appellate courts review a district court's decision on whether to hold an evidentiary hearing for an abuse of discretion. See *Haddock*, 282 Kan. 475, Syl. ¶ 10. A district court abuses its discretion if its decision is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Bilbrey*, 317 Kan. 57, Syl. ¶ 3, 523 P.3d 1078 (2023). Stanton, as the asserting party, bears the burden of showing that such an abuse occurred. See *State v. Keys*, 315 Kan. 690, 708, 510 P.3d 706 (2022). When evaluating the evidence under an abuse of discretion standard, appellate

courts do "not reweigh evidence or assess witness credibility." *State v. Woodring*, 309 Kan. 379, 380, 435 P.3d 54 (2019).

Although Stanton argued before the district court that the DNA test results were favorable, he does not bring that argument forward on appeal. And while Stanton recites the correct legal principles governing our review of the district court's decision not to hold an evidentiary hearing, he claims no legal or factual errors. So, the question of whether the district court abused its discretion becomes narrowed to whether Stanton has shown no reasonable person would agree with the district court's decision to decline holding an evidentiary hearing.

In arguing that the district court abused its discretion, Stanton first directs our attention to a portion of this court's description of the trial evidence from its prior decision, suggesting it "causes [the] reader to visualize Stanton inserting his penis into L.B.'s anus, when in fact it was the opposite[.]" See *Stanton*, 2018 WL 4039400, at *2 ("L.B. testified that he was dazed when he was waking up. He stated that Stanton was sitting on top of him and was sodomizing him."). But even recognizing that the imprecise language used in this court's prior decision could be interpreted this way, nothing suggests that the district court was misled by that language when deciding not to hold an evidentiary hearing. Instead, the district court accurately recounted L.B.'s trial testimony in the order by stating that L.B. testified he woke up "laying on his back with Mr. Stanton putting [L.B.]'s erect penis in his anus."

Stanton next correctly points out that Kansas law permits introducing evidence of past sexual conduct when the consent of the complaining witness is at issue. *State v. Holman*, 295 Kan. 116, 139, 284 P.3d 251 (2012); *State v. Perez*, 26 Kan. App. 2d 777, 781, 995 P.2d 372 (2000) ("[A] complaining witness' prior sexual behavior is relevant to credibility when the witness' past sexual activities are so factually similar to the defendant's version of the incident in question as to diminish his or her credibility.").

Under this legal theory, Stanton contends the DNA test results deviated from the trial evidence enough that the validity of the verdict is called into question and should have warranted holding an evidentiary hearing. But he is mistaken.

Stanton notes the SERI testing excluded him as a contributor to the unknown male profile found on L.B.'s anal swab. But as the district court concluded, that fact was already known at trial because the State's DNA expert had testified that L.B.'s anal swab contained DNA from an "unknown" contributor for which there was "a partial profile and *it did not match the known profiles* . . . obtained from any of unknowns in the case." (Emphasis added.) In other words, Stanton was already excluded as a contributor, so this inconclusive evidence was unlikely to change the trial judge's mind on the issue of L.B.'s consent or credibility.

Stanton's remaining points can be addressed together because they all center on the fact that the SERI testing of L.B.'s penile head swab showed unknown male DNA, as well as semen, despite L.B. not reporting "that he ejaculated during his encounter with Stanton." But again, at trial the evidence already showed that L.B.'s penile swab contained DNA from two foreign contributors—one which was consistent with Stanton— as well as his own, so the additional DNA test results confirming the same would have had no impact on the verdict. As for the semen detected by SERI testing, it bears repeating that Stanton does not contest the district court's primary determination that the additional DNA test results were inconclusive. So, the burden is on Stanton to demonstrate that it was unreasonable for the district court to find that the inconclusive SERI testing results would not have changed the outcome.

To that end, the district court explained in its ruling that the trial judge's verdict was not based on a determination that L.B.'s credibility on the issue of consent hinged on whether the evidence showed he was sexually interested in men. Instead, the trial judge convicted Stanton because it found his testimony less credible than that of L.B., because

8

of the other contrary evidence of Stanton's prior instances of similar sexual misconduct presented at trial. Put simply, it was not unreasonable to conclude that the inconclusive DNA test results raised no substantial question of Stanton's innocence considering the trial judge's verdict. The district court did not abuse its discretion in declining to hold an evidentiary hearing.

Affirmed.