NOT DESIGNATED FOR PUBLICATION

No. 118,281

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BETTY JOAN HUGHS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Osage District Court; TAYLOR J. WINE, judge. Opinion filed May 25, 2018.
Affirmed.

*Betty Joan Hughs*, appellant pro se.

*Brandon L. Jones*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., LEBEN and SCHROEDER, JJ.

PER CURIAM: Betty Joan Hughs appeals her conviction for disorderly conduct. The facts surrounding the altercation that led to this charge are well known to the parties and need not be repeated here in detail. It suffices to say that the participants consisted of Hughs; Kajeya and Shane Kendall, her daughter and son-in-law; and Joe Hughs, her husband.

Sterling Hughs, a visitor, testified that Hughs and Kayeya were yelling at each other before the pushing and shoving began. Shane got into the shouting match. Hughs then asked her husband, Joe, if he was just going to stand there or if he was going to do something about all this. Kajeya and Shane claimed that the fight started when Hughs hit

1

their son. The boy denied that his grandmother hit him. Hughs claimed the fight began when Shane and Kajeya called their son bad names. She said Shane punched her in the face, and then the three of them began fighting.

The State charged Hughs with disorderly conduct. Kajeya and Shane were also charged. Hughs was convicted following a bench trial, and the court imposed a $50 fine. This appeal followed.

*Self-Defense*

Hughs claims she had the right to use force under K.S.A. 2017 Supp. 21-5222(a) to protect her grandson from Kajeya's abuse and to defend herself when Kajeya and Shane attacked her. She asserts that the State did not meet its burden to prove that she was not entitled to immunity from prosecution under K.S.A. 2017 Supp. 21-5231 based on this justified use of force.

Under the rule in *State v. Ulteras*, 296 Kan. 828, 845, 295 P.3d 1020 (2013), the State has the burden to show there is probable cause to believe that immunity does not apply; that is, that there are no reasonable grounds to believe that Hughs was entitled to use force considering all of the facts and circumstances. See *State v. Hardy*, 305 Kan. 1001, 1011-12, 390 P.3d 30 (2017). In resolving this claim we must determine whether there was substantial evidence to support the district court's factual findings. We review de novo the legal issue of whether Hughs had probable cause to act in self-defense or in defense of her grandson. See 305 Kan. at 1012.

K.S.A. 2017 Supp. 21-5222(a) provides that "[a] person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person or a third person against such other's imminent use of unlawful force."

2

When the parties to an altercation engage in mutual combat, self-defense does not justify the application of force. "[I]t does not matter who initiated the confrontation when both parties willingly engaged in it." *State v. Friday*, 297 Kan. 1023, 1038, 306 P.3d 265 (2013). Mutual combat is "'[o]ne into which both the parties enter willingly or voluntarily; it implies a common intent to fight . . . .' [Citation omitted.]" *State v. Coop*, 223 Kan. 302, 306, 573 P.2d 1017 (1978).

Here, the district court found that the incident began with yelling and name-calling. Considering the evidence produced at trial, there was substantial competent evidence to support the district court's finding of probable cause to believe that Hughs was not entitled to use force to protect her grandson, because calling her grandson names does not amount to a threat of an imminent use of unlawful force.

Similarly, there was substantial competent evidence to support the district court's finding that Hughs was not entitled to use force to protect herself. The evidence established that Hughs was a willingly participant in the altercation and was not acting simply in self-defense.

The district court did not err in finding that Hughs was not immune from prosecution under her theory that she acted in self-defense and in the defense of her grandson.

*Consideration of Facts Outside the Record*

Hughs claims the district court erroneously found the fact that she had used physical force to defend her grandson when she only used "verbal force" to do so. In considering this claim we review the record for substantial competent evidence. See *State v. James*, No. 115,324, 2016 WL 7429525, at *5 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1325 (2017).

3

In deciding the case the court cannot rely on facts not in evidence, but it can draw reasonable inferences based on the evidence that was admitted. See *State v. Baker*, 281 Kan. 997, 1012, 135 P.3d 1098 (2006).

Hughs was charged with disorderly conduct, which is defined in K.S.A. 2017 Supp. 21-6203(a) as follows:

"Disorderly conduct is one or more of the following acts that the person knows or should know will alarm, anger or disturb others or provoke an assault or other breach of the peace:

"(1) Brawling or fighting;

"(2) disturbing an assembly, meeting or procession, not unlawful in its character; or

"(3) using fighting words or engaging in noisy conduct tending reasonably to arouse alarm, anger or resentment in others."

The district court found that Hughs and her fellow combatants had engaged in a verbal confrontation in which they were screaming and cursing at each other. There is substantial competent evidence in the record of the trial to support this finding. This finding alone is sufficient to support a conviction for disorderly conduct because the offense can consist merely of using fighting words or engaging in noisy conduct tending reasonably to arouse alarm, anger, or resentment in others.

The district court also found that Hughs had engaged in fighting and brawling, which would satisfy the elements of this offense. Based on the testimony of the investigating deputy, as well as the testimony of Sterling and of Hughs herself, there was ample evidence to support this finding.

4

*Evidence of Prior Bad Acts and Interruptions by the Prosecutor*

Hughs claims that the district court erred in not allowing her to introduce evidence of prior abuse by Kajeya. She also complains that the prosecutor kept interrupting her. She claims these resulted in her being denied a fair trial.

A defendant has the right to present a defense, but the right is not without limits. The defendant's right to present a defense is subject to the rules of evidence and procedure. "[I]f admissible evidence that is an integral part of the theory of defense is erroneously excluded, the defendant's fundamental right to a fair trial has been violated." *State v. Meeks*, 301 Kan. 114, 117, 339 P.3d 766 (2014).

K.S.A. 2017 Supp. 60-455(a) provides that evidence of a person's prior bad acts is generally inadmissible to prove that person's propensity to commit a crime or a civil wrong. But "such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." K.S.A. 2017 Supp. 60-455(b). A party wishing to invoke this exception to the general rule must make a pretrial motion to admit the evidence and inform the opposition of the intent to use it. See K.S.A. 2017 Supp. 60-455(e). Hughs made no such motion to invoke the exception in K.S.A. 2017 Supp. 60-455(b). Thus, the district court did not err when it sustained the State's objection to her introducing at trial evidence of her daughter's prior misconduct.

The prosecution in this case only interrupted Hughs to make relevant objections, which it was required to do under K.S.A. 60-404 in order to preserve for appeal any improper admission of testimony or exhibits. The prosecution did not infringe on Hughs' right to a fair trial by interrupting her to make timely and relevant objections.

*Assistance of Counsel*

Hughs proceeded in this matter pro se, both at trial and now on appeal. She argues that her Sixth Amendment rights were violated when the district court failed to provide her with counsel. We review this issue de novo. See *Stinemetz v. Kansas Health Policy Authority*, 45 Kan. App. 2d 818, 829, 252 P.3d 141 (2011).

The Sixth Amendment of the United States Constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." As stated in *Argersinger v. Hamlin*, 407 U.S. 25, 37-38, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972), "'[N]o person may be *deprived of his liberty* who has been denied the assistance of counsel as guaranteed by the Sixth Amendment.'" (Emphasis added.) We need not consider the right to counsel under the Sixth Amendment when loss of liberty is not involved. Here, the State charged Hughs with disorderly conduct, a class C misdemeanor, which calls for a possible sentence of up to one month in jail or a fine of up to $500 or both. K.S.A. 2017 Supp. 21-6602(a)(3); K.S.A. 2017 Supp. 21-6611(b)(3). But on the day of trial after considering Hughs' motion to dismiss, and before the trial began, the following exchange took place:

> "[THE COURT:] . . . Mr. Jones [the prosecutor] indicated . . . and I just maybe want to put it on the record again, you're not seeking jail time on either of these, right?

> "MR. JONES: No I am not.

> "THE COURT: . . .[H]e's not seeking any jail time, the Court would not assess any jail time if you were convicted. The only possibility of a sentence then would be a fine."

Here, because the State only sought a $50 fine, the district court did not err in finding that Hughs did not have a right to have counsel appointed for her in these proceedings.

6

*Miranda Rights*

Hughs claims that the State violated her *Miranda* rights and her right to counsel when it failed to read her the *Miranda* warnings prior to questioning her while she was in police custody. In support of this argument, Hughs asserts that officers conducted an interrogation while they were booking and fingerprinting her and that the officers neither read her the *Miranda* warnings nor provided her with counsel during this interrogation. But she does not identify any statement made by her while in police custody that was introduced into evidence at trial in violation of her *Miranda* rights. Nor do we find any. Hughs fails to support this claim.

*Victim Rights*

Hughs claims her rights as a victim of a crime were violated when the State prosecuted her. She relies K.S.A. 2017 Supp. 74-7333 and the rights of victims guaranteed by Article 15, § 15 of the Kansas Constitution. We review this claim de novo. *Stinemetz*, 45 Kan. App. 2d at 829.

Kan. Const. art. 15, § 15(a) (2017 Supp.) provides in pertinent part:

"Victims of crime, as defined by law, shall be entitled to certain basic rights, including the right to be informed of and to be present at public hearings, as defined by law, of the criminal justice process, and to be heard at sentencing or at any other time deemed appropriate by the court, to the extent that these rights do not interfere with the constitutional rights of the accused."

K.S.A. 2017 Supp. 74-7333 provides in pertinent part:

"(a) In order to ensure the fair and compassionate treatment of victims of crime and to increase the effectiveness of the criminal justice system by affording victims of

7

crime certain basic rights and considerations, victims of crime shall have the following rights:

> (1) Victims should be treated with courtesy, compassion and with respect for their dignity and privacy and should suffer the minimum of necessary inconvenience from their involvement with the criminal justice system."

The remainder of K.S.A. 2017 Supp. 74-7333 discusses how the victim should be apprised of the prosecution of the crime as it unfolds and that the victim should be given access to any necessary treatment to help deal with the crime that was committed against the victim.

The three main participants in the altercation—Hughs, Kajeya, and Shane—were all prosecuted. With respect to the charges against Kajeya and Shane, Hughs was the victim. But that fact does not insulate her from her own criminal liability as a participant in the scuffle.

Prosecuting Hughs for her own misconduct does not deprive her of her rights as a victim vis-à-vis Kajeya and Shane. Hughs was informed of the hearings involving the charges against Kajeya and Shane. She was apprised of events at the various stages of their prosecutions. Moreover, the State gave Hughs as much privacy as is possible for a person who is both a victim of a crime and the suspect of a crime. The State did not request that Hughs take any unreasonable actions and did not take any action to inconvenience her. The State went out of its way to ensure that she had the requisite information as a victim of a crime but also went through the necessary steps to prosecute her as a person who had committed a crime. Neither Hughs' constitutional rights as a victim nor her statutory rights were violated.

8

*Equal Protection*

Finally, Hughs claims her right to the equal protection of the law was violated because of the way she, an elderly person, was prosecuted. To the contrary, Hughs was not treated differently than any other criminal defendant. She does not come forward with any facts that support the claim that she was treated differently due to her age. See *State v. Kelsey*, 51 Kan. App. 2d 819, 821-22, 356 P.3d 414 (2015) (recognizing that an equal protection violation requires the classification to have been treated differently than similarly situated individuals). There is no support for this claim.

Affirmed.