No. 99,830

STATE OF KANSAS, *Appellee*, v. ABEL SALAS, *Appellant*.

(210 P.3d 635)

Opinion filed July 10, 2009.

*Casey J. Cotton*, of Roger L. Falk & Associates, P.A., of Wichita, argued the cause and was on the brief for appellant.

*Julie A. Koon*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Abel Salas raises a very narrow issue of whether K.S.A. 21-2512 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it allows postconviction DNA testing of evidence if a defendant is convicted of premeditated first-degree murder but does not allow such testing if the defendant is convicted of intentional second-degree murder. To establish the equal protection violation, Salas argues that the class of individuals who commit first-degree murder is indistinguishable from the class of individuals who commit intentional second-degree murder because, as he phrases his argument, the "two crimes involved here are substantially similar as to the necessary elements." We reject this argument; comparing the elements as Salas invites us to do reveals the crimes are distinguishable.

The issue reaches this court after Salas filed a motion for DNA testing under K.S.A. 21-2512. The motion was filed approximately 5 years after a jury convicted Salas of intentional second-degree murder and criminal possession of a firearm related to the death of Tracie Simon, who was found lying in a pool of blood on the floor of a hotel room. On appeal, the Court of Appeals affirmed both the conviction of intentional second-degree murder, which had been submitted to the jury as a lesser included offense of premeditated first-degree murder, and the conviction of criminal possession of a firearm, which had been charged in the complaint. The Court of Appeals also affirmed Salas' sentence of 255 month's imprisonment. *State v. Salas,* No. 86,422, unpublished opinion filed May 3, 2002, *rev. denied* September 24, 2002.

In Salas' motion, he requested DNA testing of several items of evidence collected from the scene of Simon's murder, including gloves, a hat, burnt cigarettes, swabs from beer bottles, swabs from beer cans, and swabs from a smudge on a window. Salas alleged in his motion that the evidence had either not been subjected to DNA testing, or retesting with new DNA techniques would provide "a reasonable likelihood of more accurate and probative results."

At the hearing on the motion, Salas recognized that K.S.A. 21-2512, the only statute allowing postconviction DNA testing, does

not allow testing if a defendant has been convicted of intentional second-degree murder. In relevant part, K.S.A. 21-2512 provides:

"(a) Notwithstanding any other provision of law, a person in state custody, at any time after conviction for murder as defined by K.S.A. 21-3401, and amendments thereto, or for rape as defined by K.S.A. 21-3502, and amendments thereto, may petition the court that entered the judgment for forensic DNA testing (deoxyribonucleic acid testing) of any biological material . . . ."

Hence, under the statute, postconviction testing is allowed only if a defendant was convicted of premeditated first-degree murder under K.S.A. 21-3401(a), felony murder under K.S.A. 21-3401(b), or rape under K.S.A. 21-3502.

Despite there not being any statutory authorization for DNA testing in Salas' case, he argued the coverage of the statute must be expanded to avoid an unconstitutional result; he argued K.S.A. 21-2512, as written, violates the Equal Protection Clause. To support his argument below, Salas drew the district court's attention to *State v. Denney*, 278 Kan. 643, 101 P.3d 1257 (2004).

In *Denney*, this court concluded that aggravated criminal sodomy, which was not included in K.S.A. 21-2512 as a crime for which DNA testing could be conducted, was indistinguishable from rape under the facts in that case. The court reasoned that rape could consist of something less than voluntary consent to penetration of the female sex organ by the male sex organ, while aggravated criminal sodomy could consist of something less than voluntary consent to penetration of another female bodily orifice by the male sex organ. Hence, at least for purposes of determining if DNA testing would be allowed, under the facts of the case, the two crimes were so indistinguishable that K.S.A. 21-2512 violated equal protection. To remedy the violation, the *Denney* court extended the statute's coverage to include testing for aggravated criminal sodomy.

The district court found *Denney* distinguishable from the present case and rejected Salas' equal protection argument, concluding that there is much more of a "difference between first-degree murder and second-degree murder than [between] the two sex offenses that were involved in the *Denney* case." The court further expressed concern that if DNA testing for second-degree murder is permitted under current law, a door would open to requests for

DNA testing involving other offenses not specifically identified in K.S.A. 21-2512. "[W]e're going to have to go to voluntary [manslaughter], then how about involuntary [manslaughter], and maybe we should get into the nonhomicide cases where the stakes are very high and the sentences are very long." Ultimately, the court found no equal protection violation.

On appeal, Salas again concedes that K.S.A. 21-2512 does not provide him a right to DNA testing and focuses on an equal protection argument by comparing the similarity between premeditated first-degree murder and intentional second-degree murder.

As we consider this argument, our standard of review is unlimited as it is anytime an appellate court examines whether a statute creates an unconstitutional classification. *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, Syl. ¶ 10, 189 P.3d 508 (2008); see *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 (2008) Although our review is unlimited, it is based on a presumption that a statute is constitutional. Hence, courts must resolve doubts regarding a statute's constitutionality in favor of its validity. In fact, "[t]his court not only has the authority, but also the duty, to construe a statute in such a manner that it is constitutional if this can be done within the apparent intent of the legislature in passing the statute." *State v. Martinez*, 268 Kan. 21, Syl. ¶ 2, 988 P.2d 735 (1999); see *State v. Brown*, 280 Kan. 898, 899, 127 P.3d 257 (2006); *State v. Van Hoet*, 277 Kan. 815, 829, 89 P.3d 606 (2004).

When the constitutionality of a statute is challenged on the basis of an equal protection violation, the first step of analysis is to determine the nature of the legislative classifications and whether the classifications result in arguably indistinguishable classes of individuals being treated differently. Only if there is differing treatment of similarly situated individuals is the Equal Protection Clause implicated. See *Hodges v. Johnson*, 288 Kan. 56, 72, 199 P.3d 1251 (2009); *Denney*, 278 Kan. at 652; see also *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985) (guiding principle of equal protection analysis is that similarly situated individuals should be treated alike). After determining the nature of the legislative classifications, a court examines the rights which are affected by the classifications.

The nature of the rights dictates the level of scrutiny to be applied—either strict scrutiny, intermediate scrutiny, or the deferential scrutiny of the rational basis test. The final step of the analysis requires determining whether the relationship between the classifications and the object desired to be obtained withstands the applicable level of scrutiny. *State v. Limon*, 280 Kan. 275, 283-84, 122 P.3d 22 (2005); see *Denney*, 278 Kan. at 651, 654 (applying rational basis test); see also *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68-69, 174 L. Ed. 2d 38, 129 S. Ct. 2308 (2009) (considering due process attack on Alaska's postconviction DNA testing statute; noting that "[a] criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man" and consequently a State "has more flexibility in deciding what procedures are needed in the context of postconviction relief").

In regard to the first step of the analysis, the United States Supreme Court has held that an individual complaining of an equal protection violation has the burden to demonstrate that he or she is "similarly situated" to other individuals who are being treated differently. Because the complaining party has this burden and also because a court presumes a statute is constitutional, the parameters of a court's consideration of whether individuals are similarly situated is set by the distinctions argued by the complaining party. See *Heller v. Doe*, 509 U.S. 312, 319-21, 125 L. Ed. 2d 257, 113 S. Ct. 2637 (1993); *Congregation Kol Ami v. Abington Township*, 309 F.3d 120, 137 (3d Cir. 2002) (citing *Cleburne*, 473 U.S. at 447-501); *Hodges*, 228 Kan. at 72-73; *Limon*, 280 Kan. at 283-84.

Here, Salas has set narrow parameters, arguing "that second degree murder and first degree murder were substantially similar offenses." Building his argument, he further limits the comparison by stating that the two crimes are "substantially similar" because

"the only difference between the two offenses is premeditation. For Murder in the First Degree, the State must prove premeditation. Both offenses require the intentional killing of another human being. Therefore, the two crimes involved here are substantially similar as to the necessary elements, and are arguably indistinguishable on that basis."

Salas again advances *Denney*, 278 Kan. 643, for support of this argument.

As previously noted, in *Denney* the classifications at issue were distinguished by whether the individual was convicted of rape or aggravated criminal sodomy. In concluding the classifications were "arguably indistinguishable" we stated:

> "In short, rape can consist of something less than voluntary consent to penetration of the female sex organ by the male sex organ, while aggravated criminal sodomy can consist of something less than voluntary consent to penetration of another female bodily orifice by the male sex organ. Here, Denney clearly committed the latter: penetrating his victims' anuses with his male sex organ. Accordingly, we hold that Denney, convicted of aggravated criminal sodomy under such circumstances, is arguably indistinguishable from those people who are convicted of rape [using] the male sex organ." 278 Kan. at 653-54.

Simply put, both crimes in *Denney* involved something less than voluntary consent to penetration of a female bodily orifice by the male sex organ. Hence, the required elements were arguably indistinguishable.

Salas argues that, in a similar fashion, premeditated first-degree murder and intentional second-degree murder are "substantially similar as to the necessary elements, and are arguably indistinguishable on that basis." As the State notes, however, the identity of elements that existed in *Denney* does not exist in this case. Rather, the crimes of premeditated first-degree murder and intentional second-degree murder are distinguished by the premeditation element.

Recently, we stated: "Comparing premeditated first-degree murder and intentional second-degree murder leads to the conclusion these crimes are *clearly not identical*. . . . The difference between premeditated first-degree murder and intentional second-degree murder is that premeditated first-degree murder includes the element of premeditation. K.S.A. 21-3401(a); K.S.A. 21-3402(a)." (Emphasis added.) *State v. Warledo*, 286 Kan. 927, 951, 190 P.3d 937 (2008) (applying Kansas' identical offense sentencing doctrine). Indeed, this court has characterized premeditation as "the defining element of premeditated first-degree murder in K.S.A. 21-3401(a)." *State v. Cook*, 286 Kan. 1098, 1101, 191 P.3d

294 (2008). In contrast, intentional second-degree murder has no requirement that the defendant think the matter over beforehand. See *State v. Cosby*, 285 Kan. 230, 239, 169 P.3d 1128 (2007) (in premeditated first-degree murder case, "[t]he prosecutor then repeated the correct definition of premeditation as 'thinking the matter over beforehand' "); PIK Crim. 3d 56.04(b) (2004 Supp.) ("Premeditation means to have thought the matter over beforehand, in other words, to have formed the design or intent to kill before the act.").

Hence, we reject Salas' argument that premeditated first-degree murder and intentional second-degree murder are substantially similar as to the necessary elements and are arguably indistinguishable on that basis. Because Salas has made no other argument, he has failed to meet his burden of establishing that he is similarly situated to those who have a right to DNA testing under K.S.A. 21-2512, and his equal protection argument fails.

Affirmed.