Hill, J.:
Jason Kelsey argues that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution mandates that people in the State’s custody that are similarly situated must be similarly treated unless there are good reasons to treat them differently. Kelsey, sentenced under Jessica’s Law, is serving two concurrent mandatory life sentences for two counts of aggravated indecent liberties with a child under the age of 14, both off-grid sex crimes. He now contends that the law which permits postconviction DNA testing, K.S.A. 21-2512, violates the Equal Protection Clause because it permits testing for those serving sentences for rape or aggravated criminal sodomy, also off-grid sex crimes, but not to offenders convicted of his crimes. He asks us to reverse the district court’s summary dismissal of his motion asking for DNA testing.
Because the law mandates identical sentences for someone who is 18 or older and convicted of aggravated indecent liberties with a child under the age of 14 with those offenders sentenced for rape or aggravated criminal sodomy, we hold that K.S.A. 21-2512 does violate the Equal Protection Clause. The two classes of offenders are similarly situated, and there is no rational basis for treating them differently. We reverse the district court’s summary dismissal of Kelsey’s motion and remand to the district court to make findings on whether the three threshold requirements of K.S.A 21-2512(a) are met here, requiring DNA testing.

Kelsey filed guilty.

Kelsey pled guilty to two counts of aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(3)(A). The court sen *821 tenced him under Jessica’s Law, K.S.A. 21~4643(a)(l)(C), to concurrent mandatory hard 25 life sentences with no possibility of parole for 25 years and also ordered lifetime postrelease supervision. He is now serving his sentences.
Kelsey moved for postconviction DNA testing under K.S.A. 21-2512. The court summarily denied his motion for a lack of standing. Simply put, since Kelsey stood convicted of neither murder nor rape, in the court’s view, he was not entitled to testing.
Kelsey appeals this ruling by challenging the constitutionality of Kansas’ postconviction DNA testing scheme. Specifically, he argues K.S.A. 21-2512 violates the Fourteenth Amendment’s Equal Protection Clause because the statute treats similarly situated offenders differently without any justification for such treatment.
We note that Kelsey did not raise his constitutional argument in his pro se motion in the district court, but it appears for the first time here in his brief to this court. Generally, constitutional grounds for reversal asserted for the first time on appeal are not properly before this court for review. State v. Coman, 294 Kan. 84, 89, 273 P.3d 701 (2012). However, we address it now under an exception set forth in State v. Anderson, 294 Kan. 450, 464-65, 276 P.3d 200 (2012)—specifically, Kelsey’s newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case. See State v. Denney, 278 Kan. 643, 651, 101 P.3d 1257 (2004). In Denney, the court addressed the constitutionality of K.S.A. 21-2512 for the first time on appeal. We follow the Supreme Court’s lead in Denney.

Our standard of review and guiding principles.

Appellate courts presume statutes are constitutional and must resolve all doubts in favor of a statute’s validity. And we must interpret a statute in a way that malees it constitutional if there is any reasonable construction that would maintain the legislature’s apparent intent. State v. Seward, 296 Kan. 979, 981, 297 P.3d 272 (2013).
The Fourteenth Amendment to the United States Constitution provides “[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws.” The Equal Protection *822 Clause of the Fourteenth Amendment “requires that states treat similarly situated individuals similarly.” State v. Cheeks, 298 Kan. 1, Syl. ¶ 3, 310 P.3d 346 (2013). Kansas courts evaluate equal protection challenges using a three-step process:
“First, the court considers whether the legislation creates a classification resulting in different treatment of similarly situated individuals. Second, if the statute does treat ‘arguably indistinguishable’ individuals differently, then tire court examines the nature of the classification or right at issue to determine the appropriate level of scrutiny. Finally, the court applies the proper level of scrutiny to the statute.” (Emphasis added.) Cheeks, 298 Kan. 1, Syl. ¶ 2.
The level of such scrutiny is based on the rights involved. There are three levels—strict scrutiny, intermediate scrutiny, and the differential scrutiny of the rational basis test. State v. Salas, 289 Kan. 245, Syl. ¶ 3, 210 P.3d 635 (2009). The Supreme Court has previously determined that because K.S.A. 21-2512 does not burden a fundamental right or involve a suspect class, it would analyze the equal protection question using a rational basis test. Cheeks, 298 Kan. at 8; Denney, 278 Kan. at 654. We will as well.
Kelsey, as the party challenging the law’s constitutionality, has the burden to prove he is similarly situated to other members of a class receiving different treatment, and in conducting our review, we are limited by the distinctions Kelsey argues. See Salas, 289 Kan. at 249. The Salas court held that “the parameters of a court’s consideration of whether individuals are similarly situated [are] set by the distinctions argued by the complaining party.”

The statute in question is limited.

By its own terms, K.S.A. 21-2512 permits only offenders convicted of premeditated first-degree murder or rape to receive post-conviction DNA testing of biological materials. The statute permits DNA testing if three conditions are met:
“(a) Notwithstanding any other provision of law, a person in state custody, at any time after conviction for murder as defined by K.S.A. 21-3401, and amendments thereto, or for rape as defined by K.S.A. 21-3502, and amendments thereto, may petition the court that entered the judgment for forensic DNA testing (deox-yribonucleic acid testing) of any biological material drat:
(1) Is related to the investigation or prosecution that resulted in conviction;
(2) is in the actual or constructive possession of the state; and
*823 (3) was not previously subjected to DNA testing, or can be subjected to retesting with new DNA techniques that provide a reasonable likelihood of more accurate and probative results.” K.S.A. 21-2512.
We do not know if the three conditions Usted above are satisfied because the court summarily dismissed the motion. If Kelsey prevails on this equal protection attack on the statute and we extend the statute to those convicted of his crime and serving a similar sentence to his, he will be entitled to a remand of the issue to the district court for a hearing to determine whether he can establish these three statutory conditions.
Historically, our Kansas Supreme Court has on three occasions examined this statute when it was dealing with equal protection questions—Denney, 278 Kan. 643; Salas, 289 Kan. 245; and Cheeks, 298 Kan. 1. Collectively, the opinions give us clear guidance on how to proceed in this case. In looking for similarities, the court, at first, examined the elements of the crimes charged but has since moved on to an examination of the terms of the different offenders’ sentences. Reading these opinions makes it clear that the sentences being served by tire offenders are now determinative of our inquiry.
First, in Denney, the Supreme Court held that K.S.A. 21-2512 violated the Equal Protection Clause for offenders convicted of aggravated criminal sodomy involving penetration of another female bodily orifice by the male sex organ. 278 Kan. at 649-61. The court entertained the question for the first time on appeal as it was not raised in Denney’s pro se motion to the district court.
The Denney court focused on the similarity of the elements between the crimes of rape and aggravated criminal sodomy under the facts of that case and found no rational basis for differing treatment existed. The court concluded that Denney committed his crime by penetrating his victims’ anuses with his male sex organ, a crime the court found to be arguably indistinguishable from an offender convicted of rape by penetrating a female sex organ with his male sex organ. 278 Kan. at 653-54. Going further, the court rejected arguments that a rational basis for differing treatment could be based on the cost of testing or the differential of the severity levels of rape and criminal sodomy. 278 Kan. at 651-56.
*824 To remedy the constitutional violation, the court declined to strike down K.S.A. 21-2512. Instead, it extended the statute to include postconviction DNA testing for offenders in a similar situation as Denney s. Denney, 278 Kan. at 660. Obviously, the similarity of the criminal acts and elements of the crimes were uppermost in the court’s analysis in Denney,
Next, in Salas our Supreme Court again focused on the elements of two crimes—premeditated first-degree murder and intentional second-degree murder. Limiting itself to considering only the offenders that Salas claimed to be similarly situated, die court held that K.S.A. 21-2512 providing postconviction DNA testing if an offender is convicted of first-degree premeditated murder does not violate equal protection by not extending the same right to offenders convicted of intentional second-degree murder. 289 Kan. at 249-51. The court concluded that offenders who commit first-degree murder with premeditation are not similarly situated to those' offenders convicted of intentional second-degree murder. The difference is the premeditation element, which the court considered to be a rational basis for differing treatment. 289 Kan. at 250-51.
Finally, in Cheeks the court addressed the equal protection challenge left unanswered in Salas—a challenge not based on the elements of the crimes of second-degree murder and first-degree premeditated murder, but based on the punishment imposed for both crimes. Because Cheeks framed his “similarly situated” analysis on the punishment imposed for die crime—not the elements of die crime or the conduct tiiat violates those elements—Salas did not control the court’s decision in Cheeks. 298 Kan. at 6.
Instead, the court held tiiat because Cheeks received the maximum indeterminate sentence of 15 years to life for second-degree murder, he was similarly situated to offenders convicted of first-degree premeditated murder who received a life sentence. Those offenders were also parole eligible after 15 years, but they could petition for postconviction DNA testing under K.S.A. 21-2512. Cheeks, 298 Kan. at 7. The court, citing Denney, concluded no rational basis existed for the differing treatment of similarly situated offenders under K.S.A. 21-2512. The court once again found the statute was unconstitutional and expanded the statute to in- *825 elude those offenders convicted of second-degree murder and receiving the presentencing guidelines maximum penalty of 15-years-to-life imprisonment. Cheeks, 298 Kan. at 8-13.

How Kelsey frames his argument is important to our inquiry.

Kelsey asks us to expand K.S.A. 21-2512 to those offenders convicted under K.S.A. 21-3504(a)(3)(A). He cites Cheeks for support. He contends the similarly situated class is defined by the sentence received:
“[Kelsey’s] conviction for aggravated indecent liberties . . . places him in a strikingly similar position for length of sentence comparison, relative to those individuals convicted of rape and aggravated criminal sodomy, just as Mr. Cheeks’ sentence for second degree murder placed him in a similar position relative to those serving sentences for first degree murder.”
In setting these narrow limits, Kelsey is arguing that offenders who receive a mandatory hard 25 life sentence under K.S.A. 21-4643 for committing aggravated indecent liberties with a child under the age of 14 in violation of K.S.A. 21-3504(a)(3)(A) are similarly situated to individuals sentenced for rape under K.S.A. 21-3502 and aggravated criminal sodomy under K.S.A. 21-3506. Thus, because Kelsey is framing the relevant distinction for our “similarly situated” analysis on the sentence the district court imposed, not the elements of the crimes or the conduct violating those elements, Cheeks controls our decision in this case. See 298 Kan. at 6-7.
In opposition, the State declines to apply an equal protection analysis under Cheeks. The State simply suggests this court find the dissenting opinions in Cheeks more persuasive than the majority opinion. However, as the State also acknowledged in malting this suggestion, this court is duty bound to follow Kansas Supreme Court precedent, unless there is some indication the court is departing from its previous position. State v. Ottinger, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011), rev. denied 294 Kan. 946 (2012). We have found no indication of an intention to depart.
Accordingly, we must decide whether Kelsey has met the threshold requirement by proving he is similarly situated to a group cov *826 ered under the statute. See Cheeks, 298 Kan. 1, Syl. ¶ 2. We hold he has done so.

A review of the sentencing statutes is helpful.

A person 18 or older convicted of aggravated indecent liberties with a child under the age of 14 in violation of K.S.A. 21-3504(a)(3)(A) is guilty of an off-grid person felony requiring a mandatory life sentence with no possibility of parole for 25 years. K.S.A. 21-4643(a)(l)(C). Rape and aggravated criminal sodomy are similarly off-grid person felonies when the victim is under the age of 14 and the offender is 18 years of age or older. K.S.A. 21-3502(c); K.S.A. 21-3506(c). Therefore, an offender 18 years of age or older convicted under K.S.A. 21-3502(a)(2) or K.S.A. 21-3506(a)(l) or (a)(2) also receives a mandatory life sentence with no possibility of parole for 25 years. K.S.A. 21-4643(a)(l)(B), (D).
The length of sentences imposed for a conviction under the remaining categories of rape and aggravated criminal sodomy vaiy with the criminal history of the offender. A person convicted of rape under K.S.A. 21-3502(a)(l) or (a)(2) is guilty of a severity level 1 person felony, except, as provided above, under subsection (a)(2) when the offender is 18 years of age or older, whereas rape as described under K.S.A. 21-3502(a)(3) or (a)(4) is a severity level 2 person felony. K.S.A. 21-3502(c). And, except as provided above, all other convictions for aggravated criminal sodomy are severity level 1 person felonies. K.S.A. 21-3506(c). Therefore, a severity level 1 rape/aggravated criminal sodomy conviction and a severity level 2 rape conviction has a presumptive sentencing range from 117 months and 155 months respectively for criminal history category I at the low end of the sentencing grid, to 467 months and 620 months respectively for criminal history category A at the high end. See K.S.A. 21-4704(a).
Given these vast sentencing ranges that are dependent upon an offender s criminal history, it could be argued that a person sentenced under K.S.A. 21-3504(a)(3)(A) is not similarly situated to certain individuals requesting postconviction DNA testing after being sentenced for rape or aggravated criminal sodomy at the high end of the sentencing grid—467 or 620 months. On the other hand, *827 K.S.A. 21-2512 does permit postconviction DNA testing for offenders receiving considerably less than the sentence for an off-grid person felony under K.S.A. 21-3504(a)(3)(A).
More importantly, when a district court imposes the mandatory off-grid sentence for a Jessica’s Law conviction of aggravated indecent liberties in violation of K.S.A. 21-3504(a)(3)(A), the offender who is 18 years of age or older receives the identical sentence as if convicted of rape under K.S.A. 21-3502(a)(2) or aggravated criminal sodomy under K.S.A. 21-3506(a)(l) or (a)(2).
Staying within the limits set by Kelsey s argument, we hold that the narrow class of offenders sentenced under Jessica’s Law for aggravated indecent liberties with a child under the age of 14 are similarly situated to offenders sentenced for rape or aggravated criminal sodomy and serving hard 25 life sentences. Kelsey has met the threshold requirement.
Moving to the remaining steps of our analysis, since there is no indication our Supreme Court is departing from Cheeks, we remain constrained by the court’s conclusion regarding the rational basis analysis and the remedy for an equal protection violation. See Cheeks, 298 Kan. at 8-13.
We employ the rational basis test because that is what the Supreme Court used in both Denney, 278 Kan. at 651-52, and Cheeks, 298 Kan. at 8. Therefore, Kelsey must meet his burden by negating “every conceivable [reasonable] basis which might support” ’ the differing treatment.” Cheeks, 298 Kan. at 8. Indeed, the Cheeks court clarified that in considering the possible rational bases offered, the means and the classification of the statute in question must meet a legitimate legislative goal:
“We do not focus on the legislature’s actual rationale for the classification. Rather, we consider whether the legislature could have had a legitimate reason for drawing the challenged classification. [Citation omitted.] To pass the rational basis test, tire statute must foster legitimate goals and the means chosen to achieve the state’s goals must ‘bear a rational relationship to those goals.’ [Citation omitted.] In other words, the proffered rational basis must be more than simply a legitimate legislative goal, the “ “ “classification [must] bear [ ] some reasonable relationship to a valid legislative objective.” ” ” (Emphasis added.) [Citations omitted.] Put another way, the proffered rational basis must both explain the distinction drawn by *828 the statute between two classes of individuals and be a legitimate legislative objective.” 298 Kan. at 8.
Kelsey simply cites Cheeks, where the court considered and rejected both the cost of the testing and the severity levels of the crimes as reasons to justify excluding second-degree murder. 298 Kan. at 8-9.
We assume that the cost of die DNA testing here would be the same as in Cheeks, where the court rejected the cost of testing as a legitimate rationale for differing treatment. We do so as well. See 298 Kan. at 9; Denney, 278 Kan. at 654. We focus then on severity levels.
In the earliest case dealing with this issue—Denney—our Supreme Court in searching for a rational basis sua sponte looked at severity levels of the crimes and suggested, “the legislature may have intended to allow postconviction DNA testing based on the severity of the crime.” 278 Kan. at 654. In examining the differences between a severity level 2 felony for aggravated criminal sodomy and a severity level 1 felony for rape by force or fear, the court acknowledged, “differences in severity level could be a rational basis for distinguishing between when [postconviction] DNA testing is allowed and when not.” Denney, 278 Kan. at 655.
However, citing K.S.A. 21-4707(a), which provides that “[c]rimes listed within each [severity] level are considered to be relatively equal in severity,” the court rejected the rational basis of crime severity level given that, in some instances, aggravated criminal sodomy had the same severity level as rape. Denney, 278 Kan. at 655-56.
Then, more recently, in Cheeks, our Supreme Court rejected the State’s suggestion that the severity of the crime was a rational basis to exclude second-degree murder from K.S.A. 21-2512 for the same reason used in Denney. Citing K.S.A. 2012 Supp. 21-6807(a), the court pointed out that even though first-degree murder was classified as an off-grid felony when the legislature enacted K.S.A. 21-2512, the legislature included rape as a crime eligible for postconviction DNA testing and that both rape and second-degree murder, both being level 1 or 2 person felonies, were “ ‘relatively *829 equal in severity.’ ” Cheeks, 298 Kan. at 10. Ih other words, similar does not mean identical when focusing on severity levels of crimes when making this type of analysis.
We are constrained to follow the ruling in Cheeks. As the Supreme Court did in Cheeks, we find no legitimate legislative goal that is met by this distinction in severity levels of the crimes for the purpose of an equal protection analysis. Given Kansas’ obvious commitment to exoneration of the innocent through DNA—both sampling and later testing—and following our Supreme Court’s lead in extending K.S.A. 21-2512 rather than nullifying the statute in such instances as here, we likewise extend K.S.A. 21-2512 to include testing for those in the same situation as Kelsey. See Cheeks, 298 Kan. at 12; Denney, 278 Kan. at 660.
In so holding, we clarify that, like Cheeks, we are not adding a new crime to the statute’s coverage but are expanding the statute to cover a much narrower class of offenders, i.e., offenders convicted of aggravated indecent liberties with a child under the age of 14 and sentenced under Jessica’s Law to the mandatory hard 25 life sentence. Since the district court summarily rejected Kelsey’s motion based on the face of the statute and made no findings regarding the three statutory requirements of K.S.A. 21-2512(a), Kelsey is only entitled to a remand to the district court for a hearing to determine whether he can establish those three statutory requirements. See Cheeks, 298 Kan. at 4.
Reversed and remanded for additional findings.
[[Image here]]