Atcheson, J., concurring:
I concur in the result affirming the Cowley County District Court's summary judgment in favor of Dr. Patrick T. Blatchford, M.D., the defendant in this medical malpractice action. Plaintiff Aaron Nash did not give notice as required under K.S.A. 2017 Supp. 12-105b(d), a failure the Kansas Supreme Court has determined to be a jurisdictional bar to actions governed by the Kansas Tort Claims Act regardless of their substantive merit. See Sleeth v. Sedan City Hospital , 298 Kan. 853, 868, 317 P.3d 782 (2014) ("[S]ubstantial compliance with K.S.A. 2012 Supp. 12-105b [d] is necessary before a court may obtain subject matter jurisdiction over the claim."). Given the procedural posture of the case, Nash no longer has a justiciable claim because of the lack of notice.
In affirming the district court, the majority opinion is needlessly convoluted in some respects. For example, the Kansas Tort Claims Act plainly applies to medical malpractice claims against municipally owned hospitals and their employees. K.S.A. 2017 Supp. 75-6115(a)(2). Everybody agrees South Central *579 Kansas Regional Medical Center is a municipal hospital, so the KTCA governs if Dr. Blatchford was an employee of the hospital. As I discuss next, he was. The majority takes an unusually circuitous route getting to that result.
In other respects, the majority opinion seems to misstate the governing legal principles but still arrives at the correct conclusions. Whether Dr. Blatchford was an employee of the medical center or an independent contractor entails a critical issue. If he were an independent contractor, the KTCA would not apply to the medical malpractice action and Nash would not have had to give notice under K.S.A. 2017 Supp. 12-105b(d). A multifaceted test guides the inquiry into the status of a service provider as an *615 employee of an employer or as an independent contractor. In general terms, an employer has the authority to control the conditions under which an employee works and to direct the manner in which the work will be done in an ongoing relationship. An independent contractor, as the name suggests, retains considerable latitude as to how the work-typically a discrete project-will be handled and commonly retains the right to undertake projects for others.
The majority incorrectly suggests that if the parties have an unambiguous written contract, the contractual terms alone determine the character of the relationship as employer-employee or as independent contractor. In turn, the majority mistakenly concludes summary judgment is appropriate here because the interpretation of an unambiguous contract is a question of law. Dr. Blatchford and the medical center had a detailed contract governing their work relationship. But the contractual terms are not dispositive.
The nature of the service relationship is a question of fact. McCubbin v. Walker , 256 Kan. 276, 281, 886 P.2d 790 (1994). Juries ordinarily decide fact questions. But a district court may grant summary judgment to a defendant if the material facts are undisputed or any disputes are resolved in the plaintiff's favor and those circumstances show either that no reasonable jury could find for the plaintiff or that the defendant is otherwise entitled to judgment as a matter of law. See Lumry v. State , 305 Kan. 545, 566, 385 P.3d 479 (2016) (summary judgment appropriate when " 'no genuine issue as to any material fact' " and those facts show moving party " 'entitled to judgment as a matter of law' ") (quoting K.S.A. 2015 Supp. 60-256 [c][2] ); Estate of Belden v. Brown County , 46 Kan. App. 2d 247, 276, 261 P.3d 943 (2011) ("Should the evidence taken in the best light for a plaintiff nonetheless fail to establish a basis for a jury to return a verdict for that plaintiff, the court may enter a summary judgment for the defendant."). The district court has to examine all of the material facts the parties have identified before granting summary judgment.
To be sure, a contract between the parties will provide highly relevant evidence bearing on whether the service provider stands as an employee or an independent contractor of the service recipient. An especially detailed contract, such as Dr. Blatchford had *616 with the medical center, may be particularly illuminating on the relationship. But a written contract does not squeeze out other relevant evidence, contrary to the majority's suggestion. Moreover, a contractual designation of the service provider as an employer or an independent contractor is not legally determinative of the actual relationship. See Atchison v. Boone Newspapers, Inc. , 981 So.2d 427, 431 (Ala. Civ. App. 2007) ; SAIF Corp. v. DCBS , 250 Or. App. 360, 371, 284 P.3d 487 (2012). In short, a written contract is not the exclusive source of evidence as to whether one party is an employee or an independent contractor of the other.
In any given case, the parties might actually deal with each other in a way different from the contractual language or the contract might be silent on various considerations material to categorizing the relationship as employer-employee or independent contractor, so evidence outside the contract can be considered. See Heyen v. Hartnett , 235 Kan. 117, Syl. ¶ 4, 679 P.2d 1152 (1984) (later conduct of parties to contract "given great weight" in construing their agreement); Sokol & Associates, Inc. v. Techsonic Industries, Inc. , 495 F.3d 605, 610 (8th Cir. 2007) (later *580 conduct of parties may show implicit modification of contract) (applying Minnesota law); 17A Am. Jur. 2d Contracts § 502 (parties may vary terms of contract through their later course of conduct). For example, a contract might say nothing about to the right of the service provider to work for others-a consideration in determining if the provider is an employee or an independent contractor. Especially in the absence of a pertinent contractual provision, a court ought to consider the parties' actions or other extrinsic evidence on that factor. The majority's approach seems to direct a district court or reviewing appellate court to discount entirely a factor left unaddressed in an unambiguous written contract.[*]
[*]Just why the majority takes that view is not entirely clear. The interpretation of the clear terms of a written contract presents a question of law for the district court in the first instance. And the parties may not introduce evidence of their negotiations-parol evidence-to alter those terms. But the issue here isn't the meaning of the contract itself; it is the business relationship between Dr. Blatchford and the medical center. Their contract is simply one piece of evidence of that relationship.
*617 In a particular case, the parties could stipulate that their contract entails the only relevant evidence of their business relationship. The courts would be limited to that stipulated universe of evidence. Likewise, if the parties submit no other evidence for the courts' consideration, the contractual terms necessarily govern. The reason, however, would not be a rule of law confining evidence on the nature of a service relationship to a written contract but the decision of the parties to limit the evidence to the contract.
Here, Nash drew on the written contract and evidence of how the medical center dealt with healthcare professionals who were independent contractors. But taking all of that evidence in the best light for Nash, Dr. Blatchford was unquestionably an employee of the medical center. The medical center paid him a salary in exchange for what constituted a fulltime job. The medical center set the amount of his vacation and other leave time. Dr. Blatchford could not undertake any outside work without the medical center's approval, and he had to turn over any remuneration to the medical center. Dr. Blatchford did not maintain an independent place of employment where he saw patients unconnected to the medical center. All of that, along with the rest of the evidence viewed favorably to Nash, establishes the medical center and Dr. Blatchford had an employer-employee relationship. The district court, therefore, appropriately tackled the issue on summary judgment and appropriately found Dr. Blatchford to be an employee of the medical center, triggering the notice requirements of K.S.A. 2017 Supp. 12-105b(d).
Nash has tried to make much of a provision in the contract reserving to Dr. Blatchford "complete" control over the "professional care of any individual patient." But an employee's exercise of professional judgment within a specialized field in performing his or her duties for an employer does not convert him or her into an independent contractor. See Lilly v. Fieldstone , 876 F.2d 857, 859 (10th Cir. 1989) (physician's exercise of professional judgment not determinative of status as independent contractor under Federal Tort Claims Act); National Optical Stores, Co. v. Bryant , 181 Tenn. 266, 270-71, 181 S.W.2d 139 (1944) (physicians and other skilled workers or "artisan employees" not rendered independent contractors merely because they exercise "professional skill" in their work *618 without strict direction when employer retains control over other aspects of relationship); McDonald v. Hampton Training School for Nurses , 254 Va. 79, 81, 486 S.E.2d 299 (1997) (exercise of professional judgment does not make physician independent contractor of hospital as matter of law; totality of circumstances in case presented jury question). Nash's argument proves too little and would indiscriminately turn employees with specialized skills, such as physicians, into independent contractors when they otherwise are not.
The majority also takes a skewed approach in analyzing Nash's equal protection claim directed at the notice requirement in K.S.A. 2017 Supp. 12-105b(d). If an injured party has a potential action under the KTCA against either a municipality or an employee *581 of a municipality, the party must file a notice with the municipality and give the municipality an opportunity to review the claim before filing suit. K.S.A. 2017 Supp. 12-105b(d). A party with a potential claim for injuries against a private entity or its employee has no obligation to give notice before suing. Nash contends that creates an unconstitutional division between victims of medical malpractice committed by physicians who are public employees and victims of negligent physicians who are not. He relies on the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Section 1 of the Kansas Constitution Bill of Rights. To the extent Section 1 secures equal protection rights, the Kansas Supreme Court has recognized those rights to be coterminous with the Equal Protection Clause. See State v. Limon , 280 Kan. 275, 283, 122 P.3d 22 (2005).
The Equal Protection Clause prevents state and local governments from treating groups of people differently, whether through legislative enactment or other policies and practices, without some justification. See Engquist v. Oregon Dept. of Agriculture , 553 U.S. 591, 601, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008) ("Our equal protection jurisprudence has typically been concerned with governmental classifications that 'affect some groups of citizens differently than others.' ") (quoting McGowan v. Maryland , 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 [1961] ); Reed v. Reed , 404 U.S. 71, 75-76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) ("The *619 Equal Protection Clause ... den[ies] to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute."); Jurado v. Popejoy Constr. Co. , 253 Kan. 116, 123, 853 P.2d 669 (1993) ("[E]qual protection requires ... that legislative classifications be reasonable, not arbitrary, and that they be justified by legitimate legislative objectives."). The nature of the classification or division dictates the importance of the justification the governmental entity must advance for its action. The United States Supreme Court has recognized three levels of review for equal protection challenges that correspond to the interests implicated in the classification: strict scrutiny if a fundamental right or a suspect class, such as race or religion, is implicated; intermediate scrutiny if a quasi-suspect class, such as gender, is implicated; and rational basis for classifications that otherwise deal with economic or social regulation of groups.
The Court recognizes the first step in an equal protection analysis entails identifying the proper standard or level of review. Having identified the standard, the reviewing court then applies that standard to evaluate the constitutional propriety of the governmental classification in light of the regulatory purposes or objectives. See Armour v. City of Indianapolis , 566 U.S. 673, 678-82, 132 S.Ct. 2073, 182 L.Ed.2d 998 (2012) ; Attorney General of N.Y. v. Soto-Lopez , 476 U.S. 898, 906 & n.6, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986) (plurality); 476 U.S. at 924, 106 S.Ct. 2317 (O'Connor, J., dissenting, joined by Rehnquist, J., and Stevens, J.); Dunn v. Blumstein , 405 U.S. 330, 335, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). In San Antonio School District v. Rodriguez , 411 U.S. 1, 17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), the Court outlined the appropriate approach to an equal protection challenge:
"We must decide, first, whether the Texas system of financing public education operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution, thereby requiring strict judicial scrutiny. ... If not, the Texas scheme must still be examined to determine whether it rationally furthers some legitimate, articulated state purpose and therefore does not constitute [a] ... violation of the Equal Protection Clause of the Fourteenth Amendment."
*620 In recent years, the Kansas Supreme Court has engrafted an otherwise unfounded preliminary determination onto the accepted analytical model by requiring a reviewing court to first find the challenged legislation creates "arguably indistinguishable classes of individuals being treated differently." Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc. , 292 Kan. 285, 315-16, 255 P.3d 1186 (2011). The court uses that as a gatekeeping requirement. So if the *582 classes created are not "similarly situated," there can be no equal protection violation and no need to identify a level of review. 292 Kan. at 315-16, 255 P.3d 1186. But the inquiry has no anchor in established equal protection jurisprudence. See State v. Kelsey , 51 Kan. App. 2d 819, 833-37, 356 P.3d 414 (2015) (Atcheson, J., concurring).
The majority-incorrectly, in my view-applies the gatekeeper requirement. We are obligated to construe federal constitutional rights as the United States Supreme Court directs. See State v. Sharkey , 299 Kan. 87, 93, 322 P.3d 325 (2014) ("[D]ecisions of the United States Supreme Court control our application of rights guaranteed by the United States Constitution."); State v. Althaus , 49 Kan. App. 2d 210, 216, 305 P.3d 716 (2013) (recognizing United States Supreme Court as "final arbiter of Fourth Amendment jurisprudence"). Our analysis, therefore, should begin with an identification of the level of review. The majority passes Nash through the "similarly situated" gate, so its analytical error did not prejudice him.
The majority goes on to suggest Nash has made three equal protection arguments by asserting K.S.A. 2017 Supp. 12-105b(d) draws a statutory distinction between victims of medical malpractice committed by physicians employed by government entities and victims of private sector physicians, the statutory classification invokes rational basis review, and the classification lacks a rational basis. Those are really part and parcel of a single equal protection challenge. Dr. Blatchford doesn't dispute the notice statute creates a classification of injured parties based on the alleged wrongdoer's status as a public or private employee and a rational basis analysis governs the equal protection claim.
Nash, however, incorrectly defines the classification created in *621 K.S.A. 2017 Supp. 12-105b(d), since the statute requires notice to a municipality of a claim against any of its employees, not just physicians or healthcare providers. The correct constitutional question is whether the division between municipal employees, on the one hand, and private sector employees, on the other, coupled with the notice requirements for the public employees has a rational basis in advancing some recognizable governmental objective.
The rational basis test is exceptionally deferential to upholding legislative line-drawing to accomplish social or economic goals. A government classification survives rational basis review if " 'a plausible policy reason' " supports the scheme and it is not so removed from that reason as to result in an " 'arbitrary or irrational' " distinction. Fitzgerald v. Racing Assn. of Central Iowa , 539 U.S. 103, 107, 123 S.Ct. 2156, 156 L.Ed.2d 97 (2003) (quoting Nordlinger v. Hahn , 505 U.S. 1, 11-12, 112 S.Ct. 2326, 120 L.Ed.2d 1 [1992] ); see Heller v. Doe , 509 U.S. 312, 319-20, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) ; State v. Cheeks , 298 Kan. 1, 9, 310 P.3d 346 (2013). The statute or other regulation may be upheld for any justifiable purpose; the purpose need not be the one that prompted its adoption. See McDonald v. Board of Election Commissioners of Chicago , 394 U.S. 802, 809, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969) ; Estate of Kunze v. Commissioner of Internal Revenue , 233 F.3d 948, 954 (7th Cir. 2000). The fit between the statute and the purpose may be inexact, meaning the legislation need not be tailored to accomplish the goal. Heller , 509 U.S. at 320-21, 113 S.Ct. 2637 ("an imperfect fit between means and ends" acceptable under rational basis review).
The statutory notice requirement extends to all municipal employees, not just physicians, and it is rationally related to at least two legitimate goals. First, under the KTCA, municipalities must indemnify employees who while acting within the scope of their duties negligently cause injuries to third parties. K.S.A. 75-6109. Even if the injured party intends to sue only the employee, he or she still must give notice to the municipality, allowing the government entity to promptly investigate and pursue settlement on behalf of its employee-avoiding indemnification liability. That is fully consistent with the underlying purpose of the notice requirement in K.S.A. 2017 Supp. 12-105b(d). See *622 Sleeth , 298 Kan. 853, Syl. ¶ 3, 317 P.3d 782. Although the notice requirement sweeps up physicians employed at municipal hospitals and K.S.A. 2017 Supp. 40-3403(h) may insulate those municipalities from vicarious liability in medical *583 malpractice actions, that merely makes K.S.A. 2017 Supp. 12-105b(d) an inexact means of accomplishing its ends. Under a rational basis review, the statute does not amount to an equal protection violation because of its inexactness.
Second, the notice requirement necessarily gives municipalities early warning of potentially incompetent or otherwise poorly performing employees whose laxity may have caused harm to third parties. Again, the municipality may investigate and, if necessary, take appropriate remedial steps to avoid recurrent mishaps. That sort of alert may be particularly important with government employees in jobs directly affecting public safety or public welfare, including physicians and other healthcare practitioners. Early notice might be considered especially appropriate as to government employees paid through tax dollars. Conversely, as Nash suggests, persons injured by physicians in the private sector do not have to give notice to the employers before filing actions for damages. But, contrary to Nash's suggestion, that does not render K.S.A. 2017 Supp. 12-105b(d) arbitrary or irrational. The statute may be underinclusive in that a comparable notice-of-negligence requirement arguably would reflect sound public policy for private sector hospitals or medical groups. The scope of the notice requirement bears on the fit between means and ends rather than a lack of rational connection between notice and an identifiable goal.
The harsh consequences that may result from the failure to give notice in conformity with K.S.A. 2017 Supp. 12-105b(d) -as this case illustrates-would not appear to implicate equal protection rights under a rational basis analysis. The notice requirement promotes identifiable (and worthwhile) objectives if followed, and that is constitutionally sufficient for equal protection purposes. The parties have not suggested otherwise.
Consistent with the points I have outlined here, I concur in affirming the district court's entry of summary judgment for Dr. Blatchford.