NOT DESIGNATED FOR PUBLICATION

No. 119,256

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRYCE ANTHONY PJESKY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Morris District Court; MICHAEL F. POWERS, judge. Opinion filed May 3, 2019.
Affirmed.

*Pamela S. Sullivan*, of Wyatt and Sullivan, LLC, of Salina, for appellant.

*Laura E. Allen*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., PIERRON AND MALONE, JJ.

PER CURIAM: Bryce Anthony Pjesky pleaded guilty to two counts of aggravated indecent liberties with a child. The district court sentenced him to a controlling term of 165 months' imprisonment and lifetime postrelease supervision. On appeal, Pjesky argues that lifetime postrelease supervision for sex offenders under K.S.A. 2011 Supp. 22-3717 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Because Pjesky fails to meet his burden to prove that statute unconstitutional, we affirm.

1

FACTS

In January 2013, Pjesky pleaded guilty to two counts of aggravated indecent liberties with a child under K.S.A. 2011 Supp. 21-5506(b)(3)(A) and (c)(3). Because Pjesky was over 18 years old and his victim was under 14 years old, his crime was an off-grid felony, and he was subject to sentencing under K.S.A. 2011 Supp. 21-6627, also known as Jessica's Law. That statute imposes a mandatory sentence of life imprisonment without the possibility of parole for 25 years. K.S.A. 2011 Supp. 21-6627(a)(1). But the State and Pjesky recommended a durational departure to the sentencing grid as part of the plea agreement. The State suggested the court should treat each offense as a severity level 1 person felony. With Pjesky's criminal history of I, he would face a maximum sentence of 165 months' imprisonment for each count. K.S.A. 2011 Supp. 21-6804. The district court departed to the grid and sentenced Pjesky to a controlling term of 165 months' imprisonment and lifetime postrelease supervision. Pjesky appeals.

ANALYSIS

*Does Lifetime Postrelease Supervision Violate the Equal Protection Clause?*

Pjesky argues that lifetime postrelease supervision for sex offenders violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Pjesky acknowledges he did not raise this issue before the district court. Generally, a party may not raise a constitutional claim for the first time on appeal. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). But this general rule has several exceptions, including:  (1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) the claim's consideration is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court's judgment may be upheld on appeal despite

2

relying on the wrong ground or reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

Pjesky argues we should review his claim because it is only a question of law arising from admitted facts and is finally determinative of the case. He also asserts consideration of his claim is necessary to serve the ends of justice and prevent the denial of fundamental rights. Kansas courts have reviewed equal protection challenges for the first time on appeal because they involve only a question of law arising on proven or admitted facts. See, e.g., *State v. Denney*, 278 Kan. 643, 650-51, 101 P.3d 1257 (2004). The State does not argue we should not review this issue. Thus, we may address this issue.

*Standard of Review and Relevant Law*

A statute's constitutionality is a question of law subject to unlimited review. We presume statutes are constitutional and must resolve all doubts in favor of a statute's validity. Courts must interpret a statute in a way that makes it constitutional if any reasonable construction would maintain the Legislature's apparent intent. *State v. Petersen-Beard*, 304 Kan. 192, 194, 377 P.3d 1127 (2016).

The Equal Protection Clause requires states to treat similarly situated individuals similarly. Courts use a three-step process when reviewing equal protection challenges. First, courts consider whether the statute creates a classification resulting in different treatment of similarly situated individuals. If the statute treats indistinguishable individuals differently, courts then determine what level of scrutiny applies. This is done by examining the classification or right at issue. Finally, courts apply the proper level of scrutiny to the statute. *State v. Cheeks*, 298 Kan. 1, 5, 310 P.3d 346 (2013).

*Similarly Situated Individuals*

The first step of the equal protection analysis requires us to determine whether the challenged statute creates a classification resulting in different treatment of similarly situated individuals. Pjesky bears the burden to prove he is similarly situated to members of a class receiving different treatment. See *State v. Salas*, 289 Kan. 245, 249, 210 P.3d 635 (2009). "[T]he parameters of a court's consideration of whether individuals are similarly situated is set by the distinctions argued by the complaining party." 289 Kan. at 249.

Pjesky challenges the treatment of sex offenders under K.S.A. 2011 Supp. 22-3717, governing parole and postrelease supervision. That statute provides varying terms of mandatory postrelease supervision based on the nature and severity level of the offender's crime of conviction. K.S.A. 2011 Supp. 22-3717(d)(1). For many crimes, these terms vary in length from 12 to 36 months. K.S.A. 2011 Supp. 22-3717(d)(1)(A)-(D).

The terms of postrelease supervision mandated by subsections (d)(1)(A) through (d)(1)(D) have two exceptions. First, they do not apply to offenders convicted of off-grid crimes. Second, and most relevant to Pjesky's situation, they do not apply to offenders convicted of sexually violent crimes. K.S.A. 2011 Supp. 22-3717(d)(1). Instead, subsection (d)(1)(G) provides a term of lifetime postrelease supervision for those convicted of sexually violent crimes on or after July 1, 2006. K.S.A. 2011 Supp. 22-3717(d)(1)(G). Pjesky's crime of conviction, aggravated indecent liberties with a child, is a sexually violent crime under the statute. K.S.A. 2011 Supp. 22-3717(d)(2)(C).

But K.S.A. 2011 Supp. 22-3717(d)(1)(G) does not apply to all offenders convicted of sexually violent crimes. Offenders sentenced under Jessica's Law are not subject to lifetime postrelease supervision. Instead, they must serve lifetime parole under K.S.A. 2011 Supp. 22-3717(u) if released from prison.

In trying to show that he is similarly situated to members of a class receiving different treatment, Pjesky focuses on the maximum sentence he faced for his conviction. As noted, Pjesky pleaded guilty to two counts of the off-grid version of aggravated indecent liberties with a child. As a result, the district court could have sentenced him under Jessica's Law. K.S.A. 2011 Supp. 21-6627(a)(1)(C). Jessica's Law mandates a sentence of life imprisonment without the possibility of parole for 25 years.

Pjesky notes that the maximum sentence under Jessica's Law is the same as the maximum sentence for other off-grid crimes, such as first-degree murder. Those crimes also carry a maximum sentence of lifetime imprisonment. K.S.A. 2011 Supp. 21-6806. But offenders convicted of those crimes do not serve lifetime postrelease supervision. Instead, they are eligible for parole after serving a certain number of years in prison. K.S.A. 2011 Supp. 22-3717(b)(1), (b)(2), and (d)(1). Pjesky thus reasons that he, as a sex offender, is being treated differently from an indistinguishable group.

Pjesky is unclear about what classifications he believes K.S.A. 2011 Supp. 22-3717 has created. He complains in his brief that sex offenders are treated unfairly under that statute because they must be sentenced to lifetime postrelease supervision. In his argument, he compares offenders sentenced to life imprisonment under Jessica's Law for sexually violent off-grid crimes with offenders sentenced to life imprisonment for other off-grid crimes. But offenders sentenced under Jessica's Law do not serve lifetime postrelease supervision. Instead, if released from prison, they serve lifetime parole. See K.S.A. 2011 Supp. 22-3717(u). There is no class of offenders who can be sentenced to life imprisonment under Jessica's Law and lifetime postrelease supervision.

Pjesky has also failed to show that the maximum sentence he faced is the relevant trait for determining if he is similarly situated to other individuals under K.S.A. 2011

Supp. 22-3717. In support of his argument, Pjesky relies on *Cheeks*. The *Cheeks* court held that K.S.A. 21-2512, which permitted only those convicted of first-degree murder or rape the opportunity to petition for postconviction DNA testing, violated the Equal Protection Clause. 298 Kan. at 11. The defendant in *Cheeks* was convicted of second-degree murder before the Kansas Sentencing Guidelines Act (KSGA) and sentenced to an indeterminate term of imprisonment of 15 years to life. He argued his maximum pre-KSGA life sentence made him similarly situated to someone sentenced pre-KSGA to life imprisonment for first-degree murder. The *Cheeks* court agreed. 298 Kan. at 6-7.

Pjesky also cites *State v. Kelsey*, 51 Kan. App. 2d 819, 359 P.3d 414 (2015). As in *Cheeks*, the defendant in *Kelsey* also challenged K.S.A. 21-2512 under the Equal Protection Clause. He was convicted of aggravated indecent liberties with a child and sentenced under Jessica's Law. He argued his sentence made him similarly situated to someone convicted of rape or aggravated criminal sodomy and sentenced under Jessica's Law. A panel of this court agreed, relying on *Cheeks*. *Kelsey*, 51 Kan. App. 2d at 825, 827.

But *Cheeks* is not dispositive here for two reasons. First, after the parties filed their briefs in Pjesky's case, the Kansas Supreme Court overruled *Cheeks*, holding that the sentence imposed does not determine "whether an offender is similarly situated to a person to whom postconviction DNA testing is statutorily available." *State v. LaPointe*, 309 Kan. 299, 318, 434 P.3d 850 (2019). While *LaPointe* did not explicitly overrule *Kelsey*, *Kelsey* appears to no longer be good law.

Second, even if *Cheeks* had not been overruled, it is not clear that it would support Pjesky's argument. As noted in *Cheeks*, the proper focus of a similarly situated inquiry is the purpose of the law. 298 Kan. at 6. As the *Cheeks* court explained, "K.S.A. 21-2512's purpose is not to punish crimes committed with premeditation. Rather, its purpose is to provide an opportunity for exoneration to innocent individuals convicted of severe

crimes." 298 Kan. at 6. The *Cheeks* court held "the relevant trait for our similarly situated analysis is the sentence imposed by the district court and not the elements of the crimes." 298 Kan. at 6-7.

In contrast, Pjesky has not identified the purpose of K.S.A. 2011 Supp. 22-3717. Nor has he explained why the maximum sentence for his crime of conviction would be the relevant trait for determining whether he is similarly situated to other individuals under that statute. In fact, the State essentially argues that the nature of his crime is the relevant trait, and thus he is not similarly situated to offenders who committed crimes that are not sexually violent. See *LaPointe*, 309 Kan. at 319 (holding that defendant convicted of aggravated robbery and aggravated assault was not similarly situated to offenders convicted of first-degree murder and rape based on elements of crimes for purposes of postconviction DNA testing statute); *Merryfield v. State*, 44 Kan. App. 2d 817, 823-24, 241 P.3d 573 (2010) (holding that sexually violent predators are not similarly situated to other civilly committed persons with respect to risks and treatment needs).

Pjesky has failed to show he is similarly situated to a group receiving different treatment under K.S.A. 2011 Supp. 22-3717. Because we are limited by the distinction he has drawn, Pjesky does not meet the threshold requirement for an equal protection violation. As a result, his claim fails.

*Rational Basis*

But assuming, without deciding, that sex offenders subject to lifetime postrelease supervision are similarly situated to other offenders subject to some other term of postrelease supervision, the different treatment of these groups likely passes constitutional muster. When analyzing an equal protection claim, courts use three levels of scrutiny: strict scrutiny, intermediate scrutiny, and the rational basis test. Courts generally apply the rational basis test unless the statute's classification targets a suspect

class or burdens a fundamental right. *State v. Limon*, 280 Kan. 275, 283, 122 P.3d 22 (2005).

Pjesky argues only that the statute's classification does not pass the rational basis test. He has not argued that a higher level of scrutiny should apply. Thus he has abandoned any argument that K.S.A. 2011 Supp. 22-3717's classification must pass intermediate or strict scrutiny. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) ("'An issue not briefed by an appellate is deemed waived and abandoned.'").

The rational basis test asks (1) whether a statute promotes legitimate goals; and (2) whether a rational relationship exists between those goals and the means chosen to achieve them. *Limon*, 280 Kan. at 288. To answer these questions, courts need not determine the Legislature's actual reason for the challenged classification. Instead, courts need only consider whether the Legislature could have had a legitimate reason for creating the classification. Under this test, Pjesky must negate "'every conceivable [reasonable] basis which might support'" the differing treatment. *Cheeks*, 298 Kan. at 8.

Kansas courts do not appear to have ever addressed whether lifetime postrelease supervision for sex offenders violates equal protection. But they have found lifetime postrelease supervision for sex offenders is not cruel and unusual punishment under the Eighth Amendment to the United State Constitution and § 9 of the Kansas Constitution Bill of Rights. See, e.g., *State v. Cameron*, 294 Kan. 884, Syl. ¶¶ 1, 2, 3, 281 P.3d 143 (2012); *State v. Mossman*, 294 Kan. 901, Syl. ¶¶ 5, 7, 9, 281 P.3d 153 (2012). In these cases, they have discussed the justifications for the disparate treatment of sex offenders in postrelease supervision.

As noted in *Mossman*, the United States Supreme Court has observed that sex offenders pose a serious threat to society, and they are more likely than other criminals to reoffend after release from prison. 294 Kan. at 924 (citing *McKune v. Lile*, 536 U.S. 24,

32-33, 122 S. Ct. 2017, 153 L. Ed. 2d 47 [2002]). So the State has a legitimate goal of protecting the public from sex offenders. Lifetime postrelease supervision advances this goal in several ways. First, lifetime postrelease supervision "act[s] as a deterrent to future crime, a goal that is particularly legitimate given sex offenders' higher rate of recidivism." *Mossman*, 294 Kan. at 911 (citing *Smith v. Doe*, 538 U.S. 84, 93, 123 S. Ct. 1140, 155 L. Ed. 2d 164 [2003]). Second, postrelease supervision can aid in rehabilitating sex offenders. *Mossman*, 294 Kan. at 911 (citing *United States v. Williams*, 636 F.3d 1229, 1234 [9th Cir. 2011]). Finally, lifetime postrelease supervision helps incapacitate sex offenders because they remain under the oversight of the State. *Mossman*, 294 Kan. at 911 (citing *Williams*, 636 F.3d at 1234).

Pjesky suggests the imposition of lifetime postrelease supervision on sex offenders "is born of animosity toward the class of persons affected." But he does not rebut any of the possible bases that might support the differing treatment. He has failed to carry his burden on this point.

Affirmed.